NATIONAL ASSOCIATION FOR the
ADVANCEMENT OF COLORED
PEOPLE, et al., Plaintiffs,

v.

Edwin MEESE, III, Defendant.

Civ. A. No. 85–1406.

United States District Court,
District of Columbia.

July 2, 1985.

Grover G. Hankins, General Counsel, Audrey B. Little, Asst. General Counsel, N.A. A.C.P., Brooklyn, N.Y., Alfred W. Blumrosen, Newark, N.J., and Jesse James, Jr., Baccus, James & Padgett, Washington, D.C., for plaintiffs.

Brook Hedge, Judith F. Ledbetter and Richard Greenberg, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

In this action, the National Association for the Advancement of Colored People (NAACP) and nine individuals seek an order (1) enjoining the Attorney General and his subordinates from reopening, causing to be reopened, or consenting to the reopening of any decree in an action brought by the government under Title VII of the

1. 42 U.S.C. § 2000e *et seq.*

2. The complaint also requests costs and attorneys' fees.

3. At least three U.S. Courts of Appeals that have had occasion to consider the issue since *Stotts*

Civil Rights Act of 1964, as amended,[1] on the basis that such decree contains goals, timetables, numerical remedies, or other relief for persons not proven to be "actual victims" of discrimination, and (2) requiring the Attorney General (a) to report to plaintiffs and to this Court if any other party seeks to modify or reopen such decree, (b) to advise the court in which a motion to reopen or modify is made of the pendency of this action, and (c) to provide plaintiffs with a list of all such cases and copies of all correspondence relating to such possible modification of such decrees. Additionally, plaintiffs seek to have this Court declare that goals, timetables, or numerical remedies entered by a court after a finding of discrimination or by consent of the parties do not violate Title VII, the Constitution, or any law of the United States.[2] Plaintiffs have requested a preliminary and permanent injunction; the defendant has moved to dismiss; and the Court has received briefs and heard oral argument.

On the merits, this action involves a dispute between the parties on the validity of employment goals and timetables for minorities and women in the wake of the Supreme Court's decision in *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984). The Department of Justice has apparently given the *Stotts* decision a far different and broader interpretation than have plaintiffs and several courts of appeals.[3] However, notwithstanding plaintiffs' request, this Court cannot validly consider the meaning of *Stotts* in this lawsuit since, whatever may be the proper interpretation of that decision, plaintiffs' action is faced at the very outset with insurmountable procedural barriers.

Although the parties have briefed and

was handed down have construed that decision more narrowly than has the Justice Department. See, *e.g., Turner v. Orr,* 759 F.2d 817 (11th Cir.1985); *EEOC v. Local 638,* 753 F.2d 1172 (2d Cir.1985); *Vanguards v. City of Cleveland,* 753 F.2d 479 (6th Cir.1985).

argued a great many issues,[4] two fundamental principles of law so clearly stand as obstacles to the grant of relief by the Court that none of the other issues is open for consideration. Plaintiffs' action must fail (1) under the principle of the separation of powers, and (2) because this Court lacks authority to interfere with or to seek to guide litigation in other district courts throughout the United States.

## I

What plaintiffs are asking this Court in essence to do is to direct the formulation and presentation by the Department of Justice of its legal position in a number of lawsuits, whether now pending in federal courts[5] or to be filed in such courts in the future. However, it is settled by law that Article II of the Constitution reserves to the President and, by implication, to his principal legal adviser, the Attorney General, the authority to prosecute actions on behalf of the United States and otherwise to present the views of the United States in the courts. The principle that prosecutorial discretion lies within the exclusive province of the Executive Branch has been expounded in such decisions as *United States*

*v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 573, 78 L.Ed.2d 379 (1984), where the Court noted that

> while the Executive Branch must of course defer to the Judicial Branch for final resolution of questions of constitutional law, the former nevertheless controls the progress of government litigation through the federal courts

and *Buckley v. Valeo,* 424 U.S. 1, 138, 96 S.Ct. 612, 691, 46 L.Ed.2d 659 (1976), where it said that

> it is to the President, and not to Congress, that the Constitution entrusts the responsibility to "take Care that the Laws be faithfully executed." Art. II, § 3.

That principle, to be sure, is not absolute: it is subject to exceptions where the Congress has explicitly, and for special, valid reasons, vested portions of the Executive's prosecutorial discretion in individuals ultimately responsible to the judicial branch.[6] But no court has ever held, or even intimated, that the courts may superintend the exercise of the prosecutorial power of the Attorney General absent a direct and un-

---

4. Thus, plaintiffs discuss the Revenue Sharing Act, the due process and equal protection clauses of the Fifth Amendment, and the First Amendment. Defendant asserts, *inter alia,* that plaintiffs lack standing and that there is no justiciable controversy.

5. The Department of Justice has taken the position that consent decrees in fifty-one cases are contrary to *Stotts.* The affected jurisdictions are Alexandria, Louisiana (police and fire); Arkansas State Police; Baltimore County, Maryland; Boston, Massachusetts (water and sewer); Boston Fire Department; Buffalo, New York, Fire Department; Buffalo Police Department; Chicago Fire Department; Chicago Police Department; Cincinnati, Ohio, Police Department; Cobb County, Georgia, Public Schools; Euclid, Ohio, Board of Education; Farmington, New Mexico; Florida Highway Patrol; Ft. Lauderdale, Florida (police and fire); Garfield Heights, Ohio, School District; Indianapolis, Indiana (police and fire); Jackson, Mississippi; Kansas City, Kansas, Board of Public Utilities; Laurel, Mississippi, Fire Department; Los Angeles Fire Department; Los Angeles Police Department; Maryland State Police; Maryland Transportation Authority; Memphis, Tennessee; Miami, Florida; Milwaukee County, Wisconsin, Sheriff;

Milwaukee Fire Department; Milwaukee Police Department; Nashville-Davidson, Tennessee (police and fire); New Jersey Fire Department (12 cities); New Jersey State Police; New York State Police; Norfolk, Virginia (police and fire); North Carolina Highway Patrol; Ohio State Highway Patrol; Omaha, Nebraska, Police Department; Onondaga County, New York, Sheriff; Philadelphia Police Department; Pinellas County, Florida; Pompano Beach, Florida; San Diego, California; San Diego County, California; San Francisco Police Department; Schiller Park, Illinois, Police Department; St. Louis, Missouri, Fire Department; Statesville, North Carolina (police and fire); Syracuse, New York (police and fire); Waukesha County, Wisconsin, Sheriff; Wichita Falls, Texas, Police Department; Woburn, Massachusetts, School Committee.

6. See, *e.g.,* E. Corwin, *The Constitution and What It Means Today* 145 (1973); *Ex parte Siebold,* 100 U.S. (10 Otto) 371, 397–98, 25 L.Ed. 717 (1879); *Hearings on Special Prosecutor before the Senate Committee on the Judiciary,* 93rd Cong., 1st Sess (1973).

ambiguous congressional mandate. There is no such mandate here.

## A.

Plaintiffs rely for support of their position in this regard on the Administrative Procedure Act, 5 U.S.C. § 553, and on Executive Order No. 12067, 43 Fed.Reg. 28967 (1978).

The APA provides that review may be had in the courts for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The complaint in this case fails with respect to both parts of that standard.

First. "Final agency action" is characterized by the imposition of an obligation, the denial of a right, or the fixing of a legal relationship. *Department of Justice v. Federal Labor Relations Authority*, 727 F.2d 481, 493 (5th Cir.1984); see also *New York Stock Exchange v. Bloom*, 562 F.2d 736, 741–42 (D.C.Cir.1973). The Supreme Court has squarely held that the initiation of enforcement proceedings is not subject to APA review inasmuch as the filing of a complaint is no more than a threshold determination that further inquiry is warranted and has no legal force except to the extent of requiring a response. *Federal Trade Commission v.*

*Standard Oil of California,* 449 U.S. 232, 241–42, 101 S.Ct. 488, 493–94, 66 L.Ed.2d 416 (1980). So here. If the Attorney General decides to file, has filed, or files in the future motions to reopen or modify decrees in various courts, those acts alone cannot and will not deny rights or create legal obligations or relationships.[7] Only the courts to which the Attorney General's motions are addressed have the power to take any of these steps, and it is these courts, not the Attorney General, which take final action.[8]

Second. Plaintiffs likewise cannot satisfy the second prong of the APA requirement, for almost by definition they have an adequate remedy in a court, that is, the remedy of opposing the Attorney General's motions in the court in which he files his papers. Not only would the filing of such an opposition there be a judicial remedy obviating the need for resort to the APA in this District, but it is a far more appropriate, far more logical remedy than a lawsuit here seeking injunctive relief. See Part II, *infra.*[9]

## B.

Plaintiffs fare no better under Executive Order 12067. That order, issued in 1978, grants to the EEOC a "leadership" and "coordination" role with respect to

---

7. It is even more obvious that the mere adoption by the Attorney General of the disputed *Stotts* interpretation, without more, cannot have these significant legal effects. Thus, the sending of letters urging affected municipalities to seek to modify consent decrees cannot directly affect minorities' legal rights, since the governing bodies of these municipalities remain free to oppose the Justice Department's approach—as many of them apparently have done (see "Justice Department Stance on Hiring Goals Resisted," *The Washington Post,* at A–2 (May 26, 1985)).

8. These plaintiffs, or others similarly situated, should normally be able to present their evidence and their arguments before those tribunals prior to the time that judicial action is taken. Plaintiffs claim that, in at least one instance, where the parties to the decree were the United States Department of Justice and the governing body of the particular locality, individual blacks were not permitted to participate in the modification procedure because they were not parties to the original decree. It

would seem to this Court that in such circumstances it would be highly desirable to allow those whom the original decree was intended to protect (even if they were not formally parties thereto), to intervene when the United States or the particular municipality jointly seek a significant modification of the decree. But that, of course, is a matter for decision by the court before which the substantive lawsuit is pending.

9. Review under the APA is also unavailable because the Attorney General's decision to seek a modification of one or more consent decrees is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). 42 U.S.C. §§ 2000e–5(f) and 2000e–6 grant to the Attorney General broad discretion with respect to the enforcement of actions under Title VII. *Cf. Heckler v. Chaney,* — U.S. ——, 105 S.Ct. 1649, 1656–58, 84 L.Ed.2d 714 (1985). Furthermore, notice and comment are not required for interpretive rules or general statements of policy without substantive impact. See *Cabais v. Egger,* 690 F.2d 234 (D.C.Cir.1982).

equal employment discrimination prohibited by Title VII. See section 1–2 of the Executive Order, reprinted at 42 U.S.C.A. § 2000e at 25 (1981).[10] There is nothing whatever in these rather vague terms—or indeed in the history of the order—that would suggest that it requires the Department of Justice to conform the exercise of its statutory responsibilities to the policies adopted by the EEOC.

Almost since the inception of the Republic, the Attorney General has had the responsibility for litigation in the courts in the name of the United States, subject, of course, to the direction of the President.[11] The Attorney General's power is now codified in several explicit sections of the United States Code, 28 U.S.C. §§ 516, 517, and 519. See also, *Heckler v. Chaney, supra.* If the President had intended by his Executive Order to have the EEOC dictate to the Attorney General with respect to individual prosecutions or to prosecution policy generally,[12] that intention would have been expressed in far more mandatory, far less ambiguous language.[13] In fact, the last subsection of the Executive Order conveys a far different intent: it specifically provides that "[n]othing in this order shall limit the Attorney General's role as the

legal adviser to the Executive Branch." Section 1–502.

In short, the constitutional principle of the separation of powers stands as an obstacle to the relief requested by plaintiffs.

## II

■ As noted, the complaint requests the issuance of an order which would, *inter alia,* preclude the Attorney General from filing motions for modification in lawsuits pending in other courts and prohibit him from consenting to any such modification. Any such order would, of course, directly affect the course of the litigation in these courts, and it would, indeed, interfere directly with their jurisdiction over the lawsuits.

The pernicious effect of such interference can be demonstrated by a few simple examples. Suppose there were circumstances in a case pending in a particular court which called for a genuine, good faith request for a modification. Is one of the parties to the lawsuit, *i.e.,* the Department of Justice, to be precluded by another court, sitting in Washington, D.C., from presenting the new factual or legal situation to the tribunal having jurisdiction over

**10.** The EEOC has issued guidelines which approve of goals and timetables benefitting persons who are not proven victims of discrimination. 29 C.F.R. § 1608.4(b), (c). The EEOC also has the authority to grant immunity to employers who follow the interpretations and opinions of the Commission. See also, *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 423 n. 17, 95 S.Ct. 2362, 2374 n. 17, 45 L.Ed.2d 280 (1975).

**11.** When it comes to such matters as possible conflicts of interest or political or other corruption within the White House, the Attorney General is insulated even from that limited amount of direction.

**12.** Plaintiffs seek to make a distinction between individual prosecutions (which they concede to be within the sole control of Department of Justice officials) and prosecution policy (which they contend is controlled by the Executive Order and the APA). However, such a distinction cannot validly be drawn. Is the policy of a particular U.S. Attorney to concentrate the resources of his Office on bank robbery cases rather than white collar crimes, or on heroin

distribution rather than marijuana possession, a "policy" which requires notice and comment in accordance with the APA? Is a policy to concentrate on race discrimination complaints in employment by large corporations rather than on sexual harassment claims emanating from small establishments a "policy" that requires clearance from the EEOC? Should the U.S. Attorney for this District have proceeded pursuant to the APA before he decided to adopt a "policy" not to prosecute those demonstrating in front of the Embassy of South Africa? To pose the questions is to demonstrate the artificiality of the distinctions plaintiffs are attempting to draw.

**13.** Just last week, in a somewhat similar context, the Court of Appeals for this Circuit held in *Falkowski v. EEOC,* 764 F.2d 907 (1985), that

The EEOC can recommend to the Department of Justice (DOJ) that one of its employees be represented by the government in a lawsuit involving the employee. The Department of Justice then makes the final decision as to whether or not to provide representation. At 909.

the action? [14] Even more, suppose another party to the lawsuit in the court having jurisdiction of the substantive controversy requests a reopening or modification of the decree. Should the Department of Justice be compelled to advise the court that it is unable to respond to the request because of an order issued by this Court? These questions illustrate the breadth of the relief requested by plaintiffs and its contravention of principles of comity.

It must also be remembered that circumstances may and usually do vary substantially from city to city and from case to case. Yet plaintiffs are requesting this Court to prohibit any acquiescence by the Department of Justice in the reopening or modification of decrees although this Court does not and cannot know what is contained in any particular decree, what factual record underlies either the decree or the request for modification, what parties are involved in the lawsuit other than the United States, and what compliance there has been with the provisions of a particular decree. It is obvious that, if only from a practical point of view, decisions concerning reopening and modification, whether requested by the Department of Justice or by any other party, can be made only by the court that has jurisdiction over the substantive controversy.

The law takes full account of these practicalities. As the Court of Appeals for the Fifth Circuit said in *Mann Manufacturing,*

*Inc. v. Hortex, Inc.,* 439 F.2d 403, 407–08 (5th Cir.1971), quoting in part from *Lapin v. Shulton,* 333 F.2d 169, 172 (9th Cir. 1964):

It is well settled that the issuing court has continuing power to supervise and modify its injunctions ... When a court is confronted with an action that would involve it in a serious interference with or usurpation of this continuing power, "considerations of comity and orderly administration of justice demand that the nonrendering court should decline jurisdiction ... and remand the parties for their relief to the rendering court, so long as it is apparent that a remedy is available there." [15]

This Court is not prepared to hold that the federal courts in the 50-odd jurisdictions contacted by the Department of Justice[16] will not provide an adequate remedy to those who wish to resist improper or legally unsound Department of Justice motions for reopening or modification of a Title VII decree.

Thus, the principle of comity between courts supplies an additional reason for the abstention of this Court from entering the orders requested by plaintiffs.[17]

### III

■ One of the basic principles, one of the glories, of the American system of jus-

---

**14.** Under Rule 60(b) of the Federal Rules of Civil Procedure, a decree may be modified on account of changed circumstances. See *System Federation No. 91 v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961).

**15.** See also, *Thaggard v. City of Jackson,* 687 F.2d 66 (5th Cir.1982); *Black & White School Children v. School District of Poutise,* 464 F.2d 1030 (6th Cir.1972); and see *Adams v. Bell,* 711 F.2d 161 (D.C.Cir.1983) (en banc) (a federal court sitting in the District of Columbia may not disregard a judgment of another federal district court and it may not require the issuance of an order that would be either ineffectual or would prejudice the rights of other, indispensable parties not before the court).

**16.** See *supra* note 5.

**17.** There are also no grounds for granting those portions of the prayer for relief that seek an order requiring the Attorney General to keep other federal courts apprised of the progress of this litigation and to keep plaintiffs and this Court informed as to the status of litigation in the affected jurisdictions. The Court's conclusion that this suit must be dismissed obviously moots the requests that other courts be notified that this litigation is pending or that this Court be notified of litigation in the other cases. As for the other informational relief sought, the plaintiffs have a list of all of the potentially affected jurisdictions (Plaintiffs' Exhibit F), and there is no legal basis for ordering the Attorney General to take special steps to keep plaintiffs informed concerning the details of litigations to which they are not parties.

tice is that the courthouse door is open to everyone—the humblest citizen, the indigent, the convicted felon, the illegal alien.[18] To close that door to the Attorney General by prohibiting him from filing in any federal court of the land pleadings expressive of the position of the Executive Branch with respect to Title VII lawsuits in which that Branch has a legal interest would be an extraordinary step indeed.[19]

Not only is there no precedent in any of the decided cases for such an invasion by a district court into the Executive's prosecutorial discretion—or for the resulting interference with the authority of other federal courts to deal with litigation pending before them as they see fit—but basic jurisprudential principles affirmatively prohibit such an action. It may well be that plaintiffs are correct in their interpretation of *Stotts*,[20] but the Supreme Court's opinion in that case is sufficiently Delphic that a contrary construction cannot with certainty be ruled out.

Relief from the Justice Department's interpretation of the law, and in particular of the *Stotts* decision, must in the first instance be sought from the courts in which the Department seeks to modify its traditional stance, and in the final analysis either from the Supreme Court (through an explication or modification of the *Stotts* ruling)[21] or from the Congress. This District Court is not the appropriate forum for a nation-wide determination of the meaning of *Stotts* by way of an injunction against the Attorney General. The government's motion to dismiss will be granted.

18. That principle of access to the courts of course consists not merely of the right to file a complaint but it includes the right to file other papers, including motions apprising the court of possible changes in the facts, the law, or the position of the litigant.

19. As indicated above, the issue is not whether the Attorney General's policy on goals, timetables, and the like is right or wrong. That is a decision for the particular court in which a motion expressive of that policy is filed. Obviously, the expressions of the Attorney General's position in these fora would have no more

weight than the position argued by any other litigant; their weight would be that of their intrinsic persuasiveness (or lack thereof), not the weight of the Office.

20. See note 3, *supra.*

21. The Court notes that the Supreme Court has recently granted certiorari in a case that may shed additional light on the meaning of the *Stotts* decision. *Wygant v. Jackson,* 746 F.2d 1152 (6th Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 2015, 85 L.Ed.2d 298 (1985).