96 F.3d 1450
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Roman E. WARNER, Petitioner-Appellant,
v.
Al C. PARKE, Superintendent, Respondent-Appellee,
**
 No. 94-1726.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 29, 1996.*
Decided Aug. 29, 1996.
 
 Before CUMMINGS, PELL and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 The district court dismissed this case for failure to exhaust state court remedies and, in the alternative, for lack of merit. Warner claims that the State's delay in responding to the order to show cause entitles him to either waiver of the exhaustion requirement or a default judgment. In United States ex rel. Mattox v. Scott, 507 F.2d 919, 924 (7th Cir.1974) (per curiam), we recommended the former solution in cases of excessive delay. Thomas Quigley, the Deputy Attorney General who appeared for the State in both the district court and on appeal, frankly admits that the delays were extensive and without legal excuse. He also correctly points out that even now, Warner has an available state remedy to pursue. See Ind.P.C.R. 1, § 1(a)(5). We do not fault the district court for declining to grant a default judgment. However, as we will explain further, exhaustion will not bar review of the merits in this case. Since the petition is meritless, as the district court found, the judgment is affirmed.[1]
 
 
 2
 I. Delay in the District Court.
 
 
 3
 Warner filed his federal petition on May 18, 1993. Two days later, the district court ordered the State to show cause by June 21, 1993 why the relief requested in the petition should not be granted. Over the course of the next nine months, the district court extended the deadline to respond five times. First, it extended the deadline sua sponte with a warning that a failure to timely respond would leave the court no choice but to grant the petition. Then Quigley filed a timely motion to extend the time to respond due to the absence of the state court record and his upcoming vacation in July 1993. The court granted him an extension until August 23, 1993. Thereafter, it twice granted untimely motions for an extension of time, both of which were supported with affidavits detailing Quigley's heavy case load. One of these affidavits also mentioned another vacation in September 1993. Warner submitted a motion to deny each of the untimely motions by the State, and he requested either a default judgment or a ruling on his petition without the benefit of the State's response. The court declined to rule on the petition. After another failure by the State to respond, the court sua sponte granted another extension until February 11, 1994. Eventually, on February 22, 1994, a new Deputy Attorney General filed an appearance and a motion to file instanter the State's answer. On the same day, Warner filed a motion asking the court to grant the writ of habeas corpus because of the delay. The court granted the State's motion, and the State filed its answer on February 24, 1994. The court also referred the case to a magistrate judge to assess the need for sanctions against the State, but subsequently vacated the order without explanation. It then dismissed the petition.[2]
 
 
 4
 Under Federal Rule of Civil Procedure 81(a)(2), the State must comply with the court's order to respond to a petition for habeas corpus relief "within 3 days unless for good cause shown additional time is allowed which in cases brought under 28 U.S.C. § 2254 shall not exceed 40 days...." However, two years after this provision was passed, Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts was adopted. Habeas Rule 4, which has the force of a superseding statute, "loosened up the deadline for responding." Bleitner v. Welborn, 15 F.3d 652, 653-54 (7th Cir.1993). The exercise of this additional discretion, which was instituted in view of the widespread overload of work in prosecutors' offices, is guided by the Federal Rules of Civil Procedure to the extent that they are not in conflict with the rules governing § 2254 cases. "[Federal Rule of Civil Procedure] 6(b)(2) allows a district judge (with inapplicable exceptions) to grant an untimely motion to extend a deadline, provided that the failure to file a timely motion was due to excusable neglect." Bleitner, 15 F.3d at 654.
 
 
 5
 In Bleitner, the district court had found excusable neglect, and the petitioner failed to argue that it was inexcusable. Id. In contrast, in this case, the district court made no express finding at all with respect to the first untimely motion and incorrectly applied the lower "good cause" standard to the second untimely motion. Warner, convinced that Rule 81 entitles him to relief, protests the extensions without directly addressing the applicability of these varying standards. However, the State candidly admits that there is no legally recognized excuse for the delay. (Appellee's Br. at 10, 12.) Therefore, given the delay in this case, at least six months of which is completely unexcused (beginning with the deadline set when the court granted the first and only timely motion for an extension of time), we find that the broader time constraints created by Habeas Rule 4 were violated. The question remains one of deciding an appropriate remedy. We review the district court's denial of a motion for default judgment for an abuse of discretion.[3] Lemons v. O'Sullivan, 54 F.3d 357, 365 (7th Cir.), cert. denied, 116 S.Ct. 528 (1995).
 
 
 6
 Default judgment is an extreme sanction that is disfavored in habeas corpus cases. Id. at 364-65. In Scott, 507 F.2d at 924, we suggested that a district court encountering long delays by the respondent should ignore exhaustion and address the merits of the petition sua sponte rather than grant a default judgment. Other potential solutions include refusing to consider a tardy return or censuring the State's representative. Id. However, default judgment in a habeas corpus case is an extreme response, and other circuits have sharply curtailed its availability or even refused to contemplate it altogether.[4] In this circuit, such a default judgment remains an alternative in theory. The court did not abuse its discretion by refusing to grant one. In comparison, Warner's proposed alternative solution of waiving exhaustion strikes us as a viable means of remedying the error in this case, and we adopt it. Cf. Hale v. Lockhart, 903 F.2d 545, 547-48 (8th Cir.1990) (holding that seven month delay attributable to overworked state attorney general and recalcitrant court reporter did not suffice to violate due process and to merit default judgment, and distinguishing Jones v. Shell, 572 F.2d 1278, 1279-80 (8th Cir.1978), in which court ordered State to show cause why merits should not be reviewed in light of failure to raise exhaustion until after seven months of inexcusable delay).
 
 
 7
 A recent amendment to the habeas corpus statute, 28 U.S.C. § 2254(b)(3) (1996), states that a court may not deem a State to have waived exhaustion without the State's express consent. However, since Warner's petition lacks merit anyway and the State has not raised the issue, we need not decide whether subsection (b)(3) applies to Warner's pending appeal and, if so, whether it prohibits waiving the exhaustion requirement as a sanction. The amended statute states that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies in the courts of the State." 28 U.S.C. § 2254(b)(2) (1996). Thus, due to the petition's lack of merit, we may address the merits whether or not § 2254(b)(3) would ordinarily bar such a remedy.
 
 
 8
 II. The Merits.
 
 
 9
 In 1974, an Indiana trial judge sentenced Warner to concurrent sentences of life imprisonment for kidnaping, two to twenty-one years for rape, and two to fourteen years for assault and battery with intent to kill. In 1991, he was paroled and received permission to move to Kentucky to find work. From Kentucky, he commenced the process to relocate to Tennessee. While on a two week travel permit to Tennessee, he forced a woman into her pick-up truck at gun point in a parking lot. Tennessee police arrested him on June 18, 1991. Within a day, Indiana authorities issued a parole violation warrant and sent it to the Tennessee authorities. A Tennessee grand jury later indicted him on various charges, and on March 6, 1992, he was convicted of aggravated assault and especially aggravated kidnaping. The Tennessee trial court sentenced him to respective terms of fifteen and sixty years to be served consecutively with each other and with his prior Indiana sentence.
 
 
 10
 Warner alleges that on March 17, 1992, he was forcibly taken by Indiana Department of Correction ("DOC") employees to Indiana's Reception Diagnostic Center without a warrant. He believes that he was transferred in order to prevent him from testifying at a hearing in a civil rights suit against a sheriff in Tennessee. The record contains a copy of a parole violation warrant dated June 18, 1991, which belies his assertion that no warrant ever existed. The summary of the preliminary hearing, which was held on March 26, 1992, also indicates that a parole violation warrant was "filed" on March 17, 1992. Although the summary states that Warner refused the assistance of a lay advocate, Warner contends that he was denied the assistance of counsel against his wishes. On May 5, 1992, the parole revocation hearing was held. Warner claims that he was denied counsel at this hearing as well. The parole board revoked his parole for a minimum of one year. When his case was reviewed the following year, the parole board denied his request for parole and declined to turn him over to Tennessee.
 
 
 11
 Warner objects to being returned to Indiana without a warrant or any compliance with extradition procedures. In particular, he relies on Indiana's Uniform Criminal Extradition Act ("UCEA"), Ind.Code § 35-33-10-3, and Indiana's Interstate Compact for Out-Of-State Probationers or Parolees, Ind.Code § 11-13-4-1. The former is merely a state statute, and federal habeas corpus relief "is not a remedy for errors of state law."[5] Montgomery, 1996 WL 392233, slip op. at * 5. The latter, an interstate compact approved by Congress, operates as both state and federal law for the purposes of federal habeas corpus relief. 28 U.S.C. § 2254(a); see Reed v. Farley, 114 S.Ct. 2291, 2296 (1994). In order to obtain habeas corpus relief for a violation of the compact, Warner must show that the violation resulted in a complete miscarriage of justice. Reed, 114 S.Ct. at 2298 (noting prior rejection of collateral attack that "did not resul[t] in a complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure.") (citations and internal quotation marks omitted).
 
 The compact states in pertinent part that
 
 12
 duly accredited officers of a sending state may enter a receiving state and there apprehend and retake any person on probation or parole. Unless otherwise required by law, no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken. All legal requirements to obtain extradition of fugitives from justice are hereby expressly waived. The decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state: provided, however, that if at the time when a state seeks to retake a probationer or parolee there should be pending against him within the receiving state any criminal charge, or he should be suspected of having committed within such state a criminal offense, he shall not be retaken without the consent of the receiving state until discharged from prosecution or from imprisonment for such offense.[6]
 
 
 13
 Ind.Code § 11-13-4-1(3). Despite Warner's assertions to the contrary, § 11-13-4-1(3) does not require Tennessee to hold him until his conviction is overturned or he has served his sentence in that state. There is nothing to suggest that Tennessee refused its consent (indeed the Tennessee trial court ordered Warner's return to Indiana), and Warner cannot assert Tennessee's privilege for his own purposes.
 
 
 14
 The nub of Warner's objection is the alleged failure of the Indiana DOC employees to identify themselves and to inform him of the basis for their authority to take him. Assuming that their actions violated the compact's proof of authority requirement, his return to Indiana did not constitute a fundamental miscarriage of justice. Before he was even sent to Kentucky, Warner agreed as a condition of his parole to waive any extradition proceedings.[7] As soon as Indiana officials learned of the arrest, they supplied the Tennessee officials with a parole violation warrant for retaking Warner. His convictions in Tennessee clearly provided probable cause for retaking him, and the compact itself barred any attacks in the Tennessee courts on Indiana's decision. Moreover, the Tennessee court expressly ordered that Warner would be returned to Indiana before serving his Tennessee sentence. Warner concedes that the individuals to whom he was turned over were Indiana DOC employees. He contends that the parole violation warrant was not executed by service upon him. Cf. Moody v. Daggett, 429 U.S. 78, 79, 81 (1976). However, neither this omission, to the extent that he claims a lack of jurisdiction or a violation of the Fourth Amendment, nor the alleged violation of the compact undermines the validity of the subsequent parole revocation. Cf. United States v. Crews, 445 U.S. 463, 474 (1980); Frisbie v. Collins, 342 U.S. 519, 522 (1952)
 
 
 15
 Of course, the parole revocation in Indiana must comply with due process. Assuming that the parole violation warrant was never formally executed, Warner's due process right to revocation proceedings did not accrue until he was taken into Indiana's custody on March 17, 1992. Moody, 429 U.S. at 86-87. Although Warner received a preliminary hearing, he contends that it violated due process because it was neither promptly held at or near the place of his parole violation, nor conducted with counsel to assist him. Gagnon v. Scarpelli, 411 U.S. 778, 790 (1973); Morrissey v. Brewer, 408 U.S. 471, 485 (1972); cf. also Ind.Code § 11-13-5-4 (authorizing--but not requiring--other compact member states to hold parole violation hearings for Indiana parolees). The purpose of a preliminary hearing is to establish probable cause that the parolee has violated a condition of his parole. As Warner himself admitted at the preliminary hearing, he had been convicted of aggravated assault and kidnaping. These new convictions obviated the need to comply with Morrissey 's preliminary hearing requirement altogether. E.g. Moody, 429 U.S. at 86 n. 7; Sneed v. Donahue, 993 F.2d 1239, 1241 (6th Cir.1993); D'Amato v. United States Parole Comm'n, 837 F.2d 72, 75-76 (2d Cir.1988) (applying principle in case in which warrant was lodged but never executed); see also Thompson v. Duke, 882 F.2d 1180, 1185 n. 6 (7th Cir.1989), cert. denied, 495 U.S. 929 (1990). With no due process right to a preliminary hearing in the first place, the alleged violations of Morrissey 's subsidiary rules for that hearing do not provide the basis for habeas corpus relief.
 
 
 16
 Warner also claims that he was denied the assistance of counsel at the final parole revocation hearing. There is no indication in the record as to whether he had the assistance of counsel at the revocation hearing or, if not, whether he waived any such right. The district court held as a matter of law that Warner was not entitled to the assistance of counsel under the Sixth Amendment. However, "[a]lthough the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings," fundamental fairness may require the assistance of counsel at such hearings under certain circumstances. Gagnon, 411 U.S. at 790.
 
 
 17
 Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and the reasons are complex or otherwise difficult to develop or present.
 
 
 18
 Id. Warner makes vague assertions that a sheriff in Tennessee "railroaded" him, but he has not demonstrated either in the district court or on appeal that he had a "timely and colorable" claim that he did not commit the Tennessee offenses. Nor has he alleged that complicated justifying or mitigating factors existed that would make counsel necessary. Therefore, we find that he has not established a right to counsel at the parole revocation hearing.
 
 
 19
 AFFIRMED.
 
 
 
 **
 Pursuant to Federal Rule of Appellate Procedure 43(c)(1), we substitute Warner's current custodian, Al C. Parke, Superintendent of the Indiana State Prison, for Robert A. Farley, former superintendent of that institution. The district court properly dismissed G. Michael Broglin, former Superintendent of the Reception Diagnostic Center, who no longer had custody of Warner
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f) (1995). No such statement having been filed, the appeal is submitted upon the briefs and record
 
 
 [1]
 Although the petition is denied for lack of merit, it is a dismissal without prejudice. The State has not filed a cross-appeal, and therefore we will not modify the district court's judgment to expand the State's rights. Tredway v. Farley, 35 F.3d 288, 296 (7th Cir.1994), cert. denied, 115 S.Ct. 941 (1995)
 
 
 [2]
 On its own motion, the district court improperly entered judgment on March 11, 1994, three days before the deadline for to Warner to respond. The court later denied his post-judgment request for a chance to respond, which it treated as a motion to reconsider. In addition, the State may have failed to comply with Lewis v. Faulkner, 689 F.2d 100 (7th Cir.1982). See Bryan v. Duckworth, 88 F.3d 431, 434 (7th Cir.1996). However, in light of Warner's allegations and arguments on appeal, these omissions are harmless. A remand is unnecessary
 
 
 [3]
 On appeal, although Warner mentions in his lengthy summary of the district court proceedings that he had asserted a violation of due process in some of his motions, he frames his argument in terms of Fed.R.Civ.P. 81, and not as a due process claim. This court has said that "at some point delay in the disposition of a petition for habeas corpus caused by the government's willfully refusing to file a response might infringe the petitioner's right to due process of law." Bleitner, 15 F.3d at 653; Ruiz v. Cady, 660 F.2d 337, 340-41 (7th Cir.1981) (dictum). By way of comparison, we recently held that due process does not require prompt resolution of state collateral attacks on convictions and that "[d]elay in processing that collateral claim does not make the continued imprisonment of the defendant unlawful, and hence, does not warrant federal habeas corpus relief." Montgomery v. Meloy, 1996 WL 392233, slip op. at * 5-* 6 (7th Cir. July 15, 1996). However, we need not address the due process dimension to the district court's delay
 
 
 [4]
 Aziz v. LeFevre, 830 F.2d 184, 187 (11th Cir.1987); Bermudez v. Reid, 733 F.2d 18, 21-22 (2d Cir.), cert. denied, 469 U.S. 874 (1984); Allen v. Perini, 424 F.2d 134, 138 (6th Cir.1970), cert. denied, 400 U.S. 906 (1970); cf. also Broussard v. Lippman, 643 F.2d 1131, 1134 (5th Cir.), cert. denied, 452 U.S. 920 (1981)
 
 
 [5]
 In Cuyler v. Adams, 449 U.S. 433, 449-50 (1981), the Supreme Court found that the Interstate Agreement on Detainers (IAD), another compact, implicitly incorporated the UCEA's pre-transfer hearing requirement as a matter of federal law. The IAD itself does not apply to transfers on the basis of parole violations. Carchman v. Nash, 473 U.S. 716 (1985). Warner does not argue that additional safeguards under the UCEA are incorporated by the compact for out-of-state parolees, and the language of that compact, see Ind.Code § 11-13-4-1(3), indicates that other extradition formalities would not apply
 
 
 [6]
 We assume, without deciding, that Tennessee qualifies as a "receiving state" within the meaning of the statute even though Kentucky had been formally designated as the receiving state. Cf. Louisiana v. Aronson, 252 A.2d 733, 734 (N.J.Ct.App.) (holding that New Jersey qualified as receiving state, even though New York was the intended receiving state), aff'd, 254 A.2d 786 (N.J.1969). When arrested, Warner had been in the process of transferring his parole to Tennessee, and, according to a letter from a parole board assistant to the Indiana Parole Board, that state had already accepted supervision of him. (R. 31, Ex. 7 at 1.)
 
 
 [7]
 The agreement stated that he would "waive extradition to the state of Indiana from any jurisdiction in or outside of the United States where I may be found and also agree that I will not contest any effort by any jurisdiction to return me to the state of Indiana." (R 31, Ex. 3 at 1.) Neither side raised this point in the district court, and we need not decide whether the waiver provision itself provides independent grounds to justify the alleged manner of Warner's transfer