**DeWayne WILKERSON, Petitioner,**

v.

**Kurt JONES, Respondent.**

No. CIV. 02–40063.

United States District Court,
E.D. Michigan,
Southern Division.

July 19, 2002.

DeWayne Wilkerson, Carson City, MI, petitioner pro se.

Brenda E. Turner, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Kurt Jones, Warden, respondent.

## OPINION AND ORDER

GADOLA, District Judge.

Before the Court is Respondent's motion to enlarge response time [docket entry 5]. Pursuant to Local Rule 7.1(e), the Court concludes that a hearing would not aid in the disposition of this motion. For the reasons set forth below, the Court shall deny Respondent's motion and shall consider the habeas petition without reference to any untimely pleading that Respondent may file.

## I BACKGROUND

Petitioner is a prisoner in a state prison. Respondent is the warden of that prison, and is represented by Assistant Attorney General Brenda E. Turner. On March 28, 2002, Petitioner filed an application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. On April 18, 2002, pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court ordered Respondent to "file an answer responding to the allegations of the petition in accordance with Rule 5 by *JUNE 7, 2002*" (emphasis in original). June 7 came and went, with nary a submission from Respondent. Finally, on July 2, 2002, Respondent, through Attorney Turner, filed the present motion through which he seeks a four-month extension of

time within which to file his answer to the petition.

## II ANALYSIS

█ The Court may adjudicate a motion for extension of time *ex parte*. *See, e.g., BASF Corp. v. Central Transport, Inc.,* 830 F.Supp. 1011, 1012 (E.D.Mich. 1993) (Gadola, J.). Although Rule 4 of the Habeas Rules governs this Court's initial determination of how much time to allow Respondent to file a response, Federal Rule of Civil Procedure 6(b)(2) provides the applicable rule of decision where, as here, a party has failed to file an answer within the amount of time ordered and then moves for an extension of time. *See Bleitner v. Welborn,* 15 F.3d 652, 654 (7th Cir.1994); *Bilodeau v. Angelone,* 39 F.Supp.2d 652, 659 (E.D.Va.1999); *see also Harris v. Nelson,* 394 U.S. 286, 294 n. 5, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969) (observing that courts apply Rule 6(b)(2) in habeas proceedings); *United States v. Davis,* No. 89–20081, 1996 WL 370179, at \*\*1–2 (D.Kan. June 18, 1996) (applying Rule 6(b)). Under Rule 6(b)(2), this Court may grant an extension only if Respondent shows that his failure to act was due to "excusable neglect."

█ Respondent has failed to argue that his failure to file timely an answer was due to excusable neglect. Instead, Respondent discusses the more lenient (and irrelevant) standard of Rule 6(b)(1), which applies to motions for an extension of time that are filed before a party has missed the relevant deadline. The Court nonetheless evaluates whether, on the basis of Respondent's argument, excusable neglect exists.

█ "[T]he excusable neglect standard has consistently been held to be strict, and can be met only in ·extraordinary cases." *Marsh v. Richardson,* 873 F.2d 129, 130 (6th Cir.1989) (internal quotation omitted) (interpreting "excusable neglect" in the context of Federal Rule of Appellate Procedure 4(a)(5)). In the rare cases in which a party establishes excusable neglect, that party must satisfy a two-pronged inquiry.

First, the movant must demonstrate that his failure to meet the deadline was a case of neglect. Neglect exists where the failure to do something occurred because of a simple, faultless omission to act, or because of a party's carelessness. *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *see also Raymond v. International Business Machines Corp.,* 148 F.3d 63, 66 (2d Cir.1998) (applying *Pioneer* to Rule 6(b)(2)). Here, it is clear that Respondent neglected to file timely his answer.

█ Second, the movant must establish that the failure to act was excusable. The determination of whether a case of neglect was excusable

> is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the [non-moving party], the length of the delay and its impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489.

█ The Court turns first to the danger of prejudice to Petitioner. "In analyzing prejudice, the Court must assume that a petitioner's constitutional claim is meritorious." *Jackson v. United States,* 129 F.Supp.2d 1053, 1069 (E.D.Mich.2000) (Gadola, J.). Assuming the correctness of Petitioner's constitutional claims, it is clear that Respondent's delay in answering his petition would prejudice Petitioner substantially insofar as it would delay this

Court's adjudication of this case and Petitioner's ultimate release from prison. Considering that the "prompt disposition of petitions for habeas corpus is highly desirable, especially given the writ's historic function of protecting the citizen against arbitrary detention," *Bleitner*, 15 F.3d at 653, Respondent's causing needless delay in this case obviously prejudices Petitioner.

The Court next addresses the length of the delay and its impact on judicial proceedings. In this case, Respondent's delay has been ongoing for more than a month and continues. The impact that this delay has had on judicial proceedings has been to preclude adjudication of the petition during the delay.

Finally, the Court considers the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. Respondent first offers his undocumented[1] assertion that "[t]he Office of the Attorney General is currently handling almost 1,000 active federal habeas petitions." Respondent next argues that Attorney Turner needs to obtain divers documents from state courts. Again, Respondent supports this assertion with no affidavit or other documentation.

■ A lawyer's busy workload is entitled to very little weight under Rule 6(b)(2). *See Stringfellow v. Brown*, No. 95–7145, 1997 WL 8856, at *2 (10th Cir. Jan.10, 1997) (reasoning that a busy workload does not establish excusable neglect under Rule 6(b)(2)); *McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1387 (11th Cir.1981) (same); *see also Zinkel & Assoc. v. Lang*, No. 01–73897, 2002 WL 484945, at *4 (E.D.Mich. Mar.11, 2002) (discussing

excusable neglect under Federal Rule of Bankruptcy Procedure 8002(c)(2)). The bland assertion of a need to obtain documents from courts likewise is of little moment in a Rule 6(b)(2) analysis. *Ruiz v. Cady*, 507 F.Supp. 50, 52 (E.D.Wis.), rev'd on other grounds, 660 F.2d 337 (7th Cir. 1981).

The Court also is not satisfied that the failure to meet the June 7, 2002 deadline was beyond the movant's control. The Court observes that the State of Michigan has developed a disturbing pattern of ignoring this Court's deadlines in habeas cases, and then belatedly asking for an extension of time within which to obtain documents.

In *Carter v. Renico*, No. 01–40362, the petitioner filed a petition for the writ of habeas corpus on February 7, 2002. The Court ordered the respondent to file an answer by May 7, 2002. The respondent failed to meet that deadline. On June 5, 2002, Attorney Turner moved for a four-month extension of time so that she could obtain parole records from the Michigan Department of Corrections.

In *Jackson v. Bock*, No. 02–40035, the petitioner filed a petition for the writ of habeas corpus on March 29, 2002. The Court ordered the respondent to answer by May 16, 2002. The respondent failed to meet the deadline, and Attorney Turner moved on June 5, 2002 for a four-month extension of time so that she could obtain state court materials.

In *Thompson v. Renico*, No. 02–40058, the petitioner filed a petition for the writ of habeas corpus on March 29, 2002. The Court ordered the respondent to answer by May 16, 2002. The respondent failed to meet the deadline, and Attorney Turner

---

**1.** Counsel arguing for an extension of time on the ground of a heavy workload often attach to their motions affidavits detailing that workload. *See, e.g., Warner v. Parke*, No. 94–1726, 1996 WL 495040, at *1 (7th Cir. Aug.29, 1996).

moved on June 5, 2002 for a four-month extension of time so that she could obtain parole records from the Michigan Department of Corrections.

In *Fields v. Gundy*, No. 02–40069, the petitioner filed a petition for the writ of habeas corpus on March 29, 2002. The Court ordered the respondent to answer by May 22, 2002. The respondent failed to meet the deadline, and Attorney Turner moved on June 5, 2002 for a four-month extension of time so that she could obtain parole records from the Michigan Department of Corrections.

This Court denied the respondent's motion for an extension of time in each of the preceding cases. Undeterred, Attorney Turner moves for an extension of time in a case that shares the same procedural background as the preceding four cases. Given Attorney Turner's consistent pattern[2] of waiting until after the deadline to file an answer has passed before seeking an additional four months within which to file an answer, this Court is unconvinced that Respondent's failure to file a timely answer was not within the Respondent's reasonable control.

Considering the circumstances surrounding Respondent's failure to adhere to the June 7 deadline, this Court finds that Respondent's neglect was inexcusable. This Court shall thus deny Respondent's motion.

This result makes particular sense in the context of a habeas case. Rapid adjudication of habeas petitions is important because, as discussed above, the writ of habeas corpus exists so that people wrongly detained may obtain freedom. Bearing in

mind that consideration, it would defy reason to hold that the State's failure to assign an adequate number of lawyers to habeas cases, or its chronic inability to obtain records speedily from its own Parole Board or courts, would justify the granting of four-month extensions. Such a rationale would create a perverse incentive for the State not to rectify these systemic problems, thereby frustrating the speedy handling of habeas cases.

Because Respondent has not timely filed an answer in this case, and because this Court refuses to consider Respondent's untimely answer, this Court shall consider the habeas petition without reference to any untimely pleadings that Respondent may submit. *See Beall v. Cockrell,* 174 F.Supp.2d 512, 518 (N.D.Tex.2001). The Court also advises the State that, should this pattern of flagrantly ignoring this Court's deadlines continue, other measures might be in order. *See Bennett v. Collins,* 835 F.Supp. 930, 935–36 (E.D.Tex.1993) (discussing judicial responses to an untimely answer).

### III CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Respondent's motion to enlarge response time [docket entry 5] is **DENIED.**

**SO ORDERED.**

---

2. Attorney Turner repeated the pattern delineated above in *Ciraula v. Smith,* No. 01–40166. In that case, however, opposing counsel stipulated to an extension. In *Barclay v. Renico,* No. 01–73138, Attorney Turner also missed the answer deadline and later

filed a motion for a four-month extension of time so that she could obtain parole records [docket entry 11]. In that case, however, the Court granted the extension. *See Barclay v. Renico,* No. 01–73138, 2002 WL 1303038, at *2 (E.D.Mich. June 6, 2002) (Duggan, J.).