Donald R. **MAHADAY**, Petitioner,

v.

John **CASON**, Respondent.

No. 02–CV–72363–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 4, 2002.

Richard Helfrick, Federal Defender Office, Detroit, MI, for Petitioner.

Brenda E. Turner, Assistant Attorney General, Habeas Division, Lansing, MI, for Respondent.

*ORDER GRANTING EXTENSION OF TIME FOR RESPONDENT TO FILE A RESPONSE TO A HABEAS CORPUS PETITION*

COHN, District Judge.

## I. *Introduction*

This is a 28 U.S.C. § 2254 proceeding. Petitioner is challenging his July 17, 1979 conviction for first-degree felony murder and assault with intent to murder in the Recorder's Court for the City of Detroit. Petitioner's conviction was affirmed by the Michigan Court of Appeals on July 9, 1981, *People v. Mahaday,* 108 Mich.App. 591, 310 N.W.2d 805 (1981), and review was denied by the Michigan Supreme Court, *People v. Mahaday,* 411 Mich. 1079 (1981).

Petitioner filed for relief on June 10, 2002. Under the federal statutes governing habeas corpus proceedings, an answer to a petition for habeas corpus is not required unless the court orders one. *See* Rule 4 of the Rules Governing Section 2254 cases. Respondent was ordered to respond on June 14, 2002, with a deadline of August 15, 2002 (60 days), which, as discussed *infra,* is within the court's discretion under Fed.R.Civ.P. 81(a)(2) and Rule 4 of the Rules Governing Section 2254 cases.[1] On August 19, 2002, respondent moved to enlarge the response time by 120 days, stating in part:

1. Respondent is currently awaiting receipt of 28 U.S.C. § 2254 Rule 5 materials, which are relevant to Petitioner's conviction and incarceration. Specifically, Detroit Recorder's Court file number 79–2279 case file, docket sheet and transcripts, Michigan Court of Appeals docket numbers 47462 and 233009 and

---

1. In non-habeas corpus cases a respondent typically has 20 days to answer. *See* Fed. R.Civ.P. 12.

Michigan Supreme Court docket numbers 67636 and 119717.

2. Until respondent receives such records, Respondent remains unable to review the same; to ascertain the facts relevant to Petitioner's habeas claim; to evaluate possible dispositive motions; to prepare an appropriate answer and deliver state court records to this Court as required by Habeas Rule 5; and, to fully assist this Court.

The motion is GRANTED.[2]

## II. *The Need for Leniency in Requests for Extensions Under § 2254*

While some courts have found that a bare-bones assertion of the need for additional time should be denied particularly because "a lawyer's busy workload is entitled to very little weight" and "[t]he bland assertion of a need to obtain documents from courts likewise is of little moment," *Wilkerson v. Jones*, 211 F.Supp.2d 856 (E.D.Mich.2002), § 2254 proceedings are unique, and the court must be careful in applying conventional standards to requests for extensions.

### A. *Background*

#### i. *Habeas Corpus Relief*

■ "One of the basic principles, one of the glories, of the American system of justice is that the courthouse door is open to everyone—the humblest citizen, the indigent, the convicted felon, the illegal alien." *Nat'l Assoc. for the Advancement of Colored People v. Meese*, 615 F.Supp. 200, 206 (D.D.C.1985). The writ of habeas corpus is one of this country's fundamental guarantees of government accountability. The writ dates back to 17th Century England with the 1641 passage of the Habeas Corpus Act. *See* Kenneth Williams, "The Antiterrorism and Effective Death Penalty Act: What's Wrong with it and How to Fix

it," 33 Conn. L.Rev. 921 (2001). The writ was later introduced in the American colonies and eventually included in the United States' Constitution. *Id.* "Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." *Fay v. Noia*, 372 U.S. 391, 402, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

#### ii. *Balancing of Interests*

■ While the Court recognizes that the "prompt disposition of petitions for habeas corpus is highly desirable, especially given the writ's historic function of protecting the citizen against arbitrary detention," *Bleitner v. Welborn*, 15 F.3d 652, 653 (7th Cir.1994), it is crucial to temper the need for expeditious resolution of a habeas corpus petition with the reality of the limited resources available to process the increasing volume of these petitions that prisoners are filing with the courts every day. *See Allen v. Perini*, 26 Ohio Misc. 149, 424 F.2d 134 (6th Cir.1970) ("No present day court can be unaware of the tremendous increase in the volume of habeas corpus petitions in both State and Federal Courts that has taken place in recent years.") In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (1996), which amended existing habeas corpus statutes and was designed in part to reduce the volume of habeas corpus petitions by creating a one-year statute of limitations for filing the petitions in federal court. *See* "The Prison Litigation Reform Act and the Antiterrorism and Effective Death Penalty Act: Implications for Federal District Judges," 115 Harv.

---

**2.** The initial 60–day period in which to respond expired on August 15, 2002. Respondent has until December 15, 2002, to file an answer.

L.Rev. 1846 (2002). However, the number of habeas corpus petitions filed since AEDPA's enactment has increased significantly. For example, state prison inmates filed 50 percent more habeas corpus petitions in 2000 (21,345) than during 1995 (13,627), the year before AEDPA took effect. *See* John Scalia, U.S. Dep't of Justice, "Prisoner Petitions Filed in U.S. District Courts, 2000, with Trends 1980–2000," Bureau of Justice Statistics Special Report (2002).

## B. *Deadlines for Responses*

### i. *The Law*

Under Fed.R.Civ.P. 81(a)(2), the State must comply with a court's order to respond to a habeas corpus petition "within 3 days unless for good cause shown additional time is allowed which in cases brought under 28 U.S.C. § 2254 shall not exceed 40 days." However, as noted in *Bleitner, supra*, Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, which has the force of a superseding statute, "loosened up the deadline for responses. Rule 4 leaves it up to the district court to fix the deadline." *Id.* at 653–54. The advisory committee notes following Rule 4 states that "Rule 4, which contains no fixed time requirement, gives the court the discretion to take into account factors such as the respondent's workload and the availability of transcripts before determining a time within which an answer must be made."

### ii. *This District's Practice*

Judges in this district have traditionally allowed the State to respond to a petition within 60 days. This response time is often not adequate, however. The Attorney General of Michigan has represented to the judges of this district that budgetary restrictions have prevented her from having sufficient staff to deal with the increasing number of § 2254 petitions filed in the district court aside from the time it takes, however well staffed she is, to garner the materials necessary to prepare and answer a petition. Because of this problem, the State frequently requests more time to respond.

## C. *Dangers of Refusing to Grant an Extension*

■ While some courts have refused to allow the State an extension of time and have considered a petition without reference to any response from the State, *Wilkerson, supra*, such a decision creates a self-inflicted wound. "The opinion writer must cleave to one guide, paramount and ever-present, the thoughtful and disinterested weighing of conflicts inherent in the controversy. Before one word is written, it is necessary to isolate the precise contours of the dispute." Ruggero J. Aldisert, "Opinion Writing" 27 (West 1990). By refusing to consider any response from the State, a judge is left with a one-sided view of the habeas corpus petition—that of the prisoner, who is most likely untrained in the law and has submitted a short petition to the court that does not include records and transcripts from the court proceedings in which the prisoner was convicted. Such a course of action does not allow the judge to "isolate the precise contours of the dispute" because he is missing half of the story: the record of the state court proceedings, which is needed to properly adjudicate. There is no way a § 2254 case can be decided on a petitioner's submission only, and a court should not put itself in a position of considering the petition without a response by the respondent. *See Beall v. Cockrell,* 174 F.Supp.2d 512 (N.D.Tex.2001).

■ A default judgment is unavailable in a habeas corpus proceeding on the ground that state officials fail to file a timely response to the petition. "In spite of the untimeliness of the State's return, the District Court would have no power to grant the writ of habeas corpus in the

absence of an evidentiary hearing and unless and until the averments of the petition have been proved by competent evidence." *Allen,* 424 F.2d at 138. *See also Lemons v. O'Sullivan,* 54 F.3d 357, 364–65 (7th Cir.1995) ("Default judgment is an extreme sanction that is disfavored in habeas corpus cases."); *Gordon v. Duran,* 895 F.2d 610, 612 (9th Cir.1990) ("The failure to respond to claims raised in a petition for habeas corpus does not entitle the petitioner to a default judgment."); *Aziz v. Leferve,* 830 F.2d 184, 187 (11th Cir.1987) ("a default judgment is not contemplated in habeas corpus cases"); *Ruiz v. Cady,* 660 F.2d 337, 341 (7th Cir.1981) ("there are several alternatives [to default judgment] the court might have employed as a more appropriate sanction.").

Furthermore, considering only the petitioner's submission creates the possibility that the writ of habeas corpus would be granted without considering any evidence or submission from the State. In reality it is the People of the State of Michigan who obtained the petitioner's conviction who would be sanctioned in a sense by such an approach. *See Allen,* 424 F.2d at 141 ("Although this case primarily involves the constitutional rights of the prisoner, the public has a right of protection against the release of convicted criminals except where violations of constitutional rights have been established."); *Bleitner,* 15 F.3d at 653 ("Releasing a properly convicted prisoner or imposing on the state the costs and uncertainties of retrying him, perhaps many years after the offense, is apt to be a disproportionate sanction for the wrong of failing to file a timely motion for an extension of time.")

D. *Conclusion*

The Court recognizes the need to expeditiously adjudicate a habeas corpus petition, particularly because there is always a possibility that a prisoner may be wrongfully detained. Quick adjudication should not, however, be at the expense of an incomplete review. "In case of dissension, never dare to judge till you have heard the other side." Euripides, *Heraclidae,* ca. 428 B.C.

SO ORDERED.