United States Court of Appeals,

Fifth Circuit.

No. 92-1664.

Tony Travis EDMOND, Petitioner-Appellant,

v.

James A. COLLINS, Director, Texas Dept. of Criminal Justice, Institutional Division, Respondent-Appellee.

Dec. 3, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before WIENER and EMILIO M. GARZA, Circuit Judges, and CLEMENT[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

A jury convicted Tony Travis Edmond of first degree murder and sentenced him to life imprisonment. After exhausting his state remedies, Edmond petitioned for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 (1988). Edmond asserts that the prosecution, in violation of the state district court's pre-trial *Brady* order, failed to produce a palmprint of Edmond's companion that, according to Edmond, would have impeached eyewitness testimony that he was the trigger man.[1] The district court denied the petition for habeas relief, and Edmond now appeals.[2] We affirm.

I

Edmond fatally shot Luis Cruz while attempting to rob him in May 1985. At Edmond's trial, Johnny Johnson, an assistant manager at Jerry's Supermarket, testified that on the day of the murder, Edmond and Robert Charles Brown came into the store. Shortly after they left, Bonifaus Cruz, the widow of the deceased, entered the store screaming that her husband had been shot. Mrs. Cruz

---

[*]District Judge of the Eastern District of Louisiana, sitting by designation.

[1]In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecution."

[2]We previously granted Edmond a certificate of probable cause. *See* 28 U.S.C. § 2253 (1988).

testified that she and her husband entered Jerry's Supermarket to cash Mr. Cruz's income tax refund check. While walking to their truck after cashing the check, Mrs. Cruz heard a commotion behind her and saw two men pushing their way through the crowd outside the store. Upon reaching their truck, Mr. Cruz opened the driver's door and leaned across the seat to unlock the passenger's door for Mrs. Cruz. At this time, Edmond, armed with a pistol, approached Mr. Cruz at the driver's door and demanded Cruz's money. Before Mr. Cruz could act, Edmond shot him and fled from the scene, climbing over a barbed wire fence in the process. Later that day, Mrs. Cruz identified two pictures, one of which was a photograph of Edmond, as possibly being that of the killer. At trial, however, Mrs. Cruz testified positively and unequivocally that Edmond was the person whom she saw shoot her husband.

Edmond, by contrast, testified that he and Brown went to Jerry's to inquire about working there. Upon leaving the store, he stopped to "flirt" with two women while Brown continued walking. Edmond then heard a "pop" and saw Brown running away from the parking lot. As a result, Edmond panicked, climbed over a barbed wire fence, and ran to Brown's grandmother's house where he found Brown.[3] Edmond testified that he asked Brown what happened, but Brown, who was taking shells out of a pistol, did not reply. Edmond denied shooting or attempting to rob anybody.[4]

Prior to trial, Edmond requested from the prosecution any evidence material in any way to his guilt or innocence or that tended to impeach any prosecution witness. Although the state district judge ordered the prosecution to produce such evidence, the prosecution failed to produce a palmprint that Brown left on the back of a truck parked next to Cruz's truck in the supermarket's

[3]Ray Lawrence, a Dallas police officer, testified that he went to a house owned by Brown's grandmother to look for Edmond and Brown. The police arrested Brown and Edmond, who was found hiding underneath a mattress. Lawrence testified that Edmond, while handcuffed and sitting in the patrol car, pointed his fingers towards the people standing on the front porch and mouthed the words "the gun" in a low voice. Later that day, Lawrence returned to the house, and Brown's grandmother voluntarily handed over a .22 caliber pistol, the type of handgun used to fatally injure Mr. Cruz.

[4]Phillip Jones, a Dallas police investigator, testified that after the police arrested Edmond and read him his rights, Edmond told him that Edmond and Brown had seen a male cashing a check at Jerry's Supermarket and decided to rob the man. Edmond and Brown followed the man out to the parking lot. Edmond, before further implicating himself in Cruz's murder, then asked for counsel and terminated the interview.

parking lot.[5] Edmond did not learn of the palmprint's existence until approximately one month after his trial concluded.

After exhausting his state remedies, Edmond sought federal habeas corpus relief, contending that the prosecution's failure to produce the palmprint violated due process. The district court denied Edmond's habeas petition.

## II

On habeas review, a federal court presumes that the state court's findings of fact are correct. *See* 28 U.S.C. § 2254(d) (1988).[6] Moreover, although a state court's determination of a mixed question of fact and law is not governed by § 2254(d), the presumption of correctness applies to the historical facts underlying the state's ultimate conclusion of law. *Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1306-07, 71 L.Ed.2d 480 (1982) (*Sumner II* ) *see Black v. Collins,* 962 F.2d 394, 401 (5th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 2983, 119 L.Ed.2d 601 (1992). Since Edmond challenges the district court's use of the statutory presumption of correctness, Edmond bears the burden under § 2254(d) of proving by "convincing evidence" that the factual determinations by the state court were erroneous. *Id.* "On appeal, we review the [district court's] factual findings for clear error; mixed questions of fact and law generally receive independent review, and questions of law are reviewed *de novo.*" *Kirpatrick v. Whitley,* 992 F.2d 491, 494 (5th Cir.1993).

Edmond generally contends that the district court erred in holding that no violation of the *Brady* doctrine occurred. The *Brady* doctrine requires the prosecution to produce exculpatory

[5]In his brief, Edmond also refers to the prosecution's suppression of a written statement given by Brown to the police. However, Edmond neither argues the facts surrounding this issue nor briefs this separate allegation. On appeal, we do not review issues not briefed. *See Morrison v. City of Baton Rouge,* 761 F.2d 242, 244 (5th Cir.1985).

[6]The factual findings of a state court system "shall be presumed to be correct" unless one of the conditions under § 2254(d) applies. *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981) (*Sumner I* ); *see* 28 § U.S.C. 2254(d) (1988) (listing eight grounds under which federal courts can set aside state court findings on habeas review). In reviewing state courts' findings, the federal courts must employ a "high measure of deference". *Marshall v. Lonberger,* 459 U.S. 422, 433, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983). "This deference requires a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even "fair support' in the record." *Id.*

evidence and evidence useful for impeachment when requested to do so by the defendant. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). To prevail on a *Brady* claim, a defendant must establish that (1) the prosecution suppressed evidence (2) favorable to the accused and (3) material to either guilt or punishment. *Cordova v. Collins,* 953 F.2d 167, 171 (5th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 959, 117 L.Ed.2d 125 (1992). The prosecution's failure to respond fully to a request for evidence favorable to the accused amounts to a due process violation "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383. "A "reasonable probability' is the probability sufficient to undermine confidence in the outcome." *Id.*

Edmond specifically argues that had he known of Brown's palmprint, he could have impeached Mrs. Cruz's identification of Edmond as the man who shot her husband.[7] Additionally, according to Edmond, the palmprint evidence would have helped substantiate Edmond's claims that Brown was in the vicinity of the shooting when Edmond heard the "pop" and saw Brown running.[8]

---

[7]Edmond further contends that because Mrs. Cruz testified that only one assailant was at the truck, the palmprint is material to demonstrate that Brown was near the truck at the time of the shooting. However, the magistrate found that

> [t]he victim's wife did not testify that [Edmond] was the only person who was present when he shot her husband; she stated only that she did not see another person with [Edmond].... Her testimony did not exclude the possibility that the accomplice could have been present but out of her view.

Record on Appeal at 94. The district court adopted this finding. Although Edmond filed written objections to the magistrate's findings, these objections consisted solely of a copy of the brief filed to support the original habeas petition to the district court. Edmond thus did not raise a factual objection by merely reurging arguments contained in the original petition. *Smith v. Collins,* 964 F.2d 483, 485 (5th Cir.1992); *see Nettles v. Wainwright,* 677 F.2d 404, 410 & n. 8 (5th Cir. Unit B 1982) (en banc) (finding that party who fails to file written, specific objections to a magistrate's proposed findings and recommendations is barred "from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice"). Moreover, after reviewing the record, we find no clear error or manifest injustice in the magistrate's factual findings.

[8]Edmond also argues that had the palmprint been disclosed, he could have established Brown's culpability and, under the Texas doctrine of the "law of parties," could have received a more lenient sentence. However, in his brief Edmond admits that the evidence placing the murder weapon in his hand shortly before the shooting of Cruz is sufficient to sustain his murder conviction under Texas law. Thus, Edmond was eligible for the punishment assessed by the jury.

The district court found that no reasonable probability existed that the result of the trial would have been different had the prosecution provided the palmprint evidence to Edmond. We agree—Edmond has not established a *Brady* violation.

To establish a valid *Brady* claim, Edmond must demonstrate that the palmprint evidence was material to the issues of guilt or punishment. "The materiality of *Brady* material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state." *Smith v. Black,* 904 F.2d 950, 967 (5th Cir.1990). In reviewing the evidence here, the palmprint evidence was material; however, neither the prosecution nor Edmond disputed that Brown was present in the general area of the murder. Moreover, the use of the palmprint evidence to impeach Mrs. Cruz merely would have been cumulative of other impeachment evidence.[9] *See Smith,* 904 F.2d at 967-68 (noting that sufficient impeachment evidence lessons materiality of *Brady* evidence). As the state court found:

> [t]he palmprint of Brown would, of course, be objective physical evidence verifying [Edmond's] claim that Brown was in the area when Mr. Cruz was shot. This evidence, while arguably "exculpatory' was merely cumulative of evidence adduced at trial.... Furthermore, there is no evidence of when the print was put there and it does not, of itself, indicate that Brown shot Mr. Cruz. Indeed, Mrs. Cruz testified unequivocally that she *saw [Edmond]* shoot her husband. Given Mrs. Cruz's eyewitness testimony and the other indicia of [Edmond's] guilt ..., we cannot conclude that there is a reasonable probability that, had the palmprint been disclosed to the defense, the result of the trial would have been different....

Record on Appeal at 32-33. *See Drew v. Collins,* 964 F.2d 411, 419-20 (5th Cir.1992) (noting that incremental impeachment value of suppressed evidence does not raise reasonable probability of a different result at trial); *Smith,* 904 F.2d at 967-68 (finding lack of *Brady* violation because defendant

*See* TEX. PENAL CODE ANN. §§ 7.01-.02 (Vernon 1974). Moreover, we treat Edmond's contention that the jury would have given him a lessor sentence, if the palmprint evidence was introduced, as mere speculation, which presents no issue for appeal. *See United States v. Valdez,* 861 F.2d 427, 432-33 (5th Cir.1988) (refusing to address conclusory assertions on appeal).

[9]Edmond impeached Mrs. Cruz's testimony in several ways. For example, Mrs. Cruz testified that she witnessed the shooting through the closed window of the passenger door of the truck. Mrs. Cruz admitted that her in-court statements about her actions immediately following the shooting differed from the written statement that she had originally given the police. Moreover, Mrs. Cruz testified that she was upset and confused after the shooting. Mrs. Cruz verified that shortly after the incident, she could not positively identify the killer from the police photographs, although she did identify Edmond as one of the two suspects. Finally, Edmond impeached Mrs. Cruz's in-court identification of him as the killer when she misidentified a three-month-old picture of Brown as being a picture of Edmond.

adequately impeached both eyewitnesses and circumstantial evidence linked the defendant to the crime charged).[10]

### III

Accordingly, we AFFIRM the judgment of the district court.[11]

---

[10]Edmond nonetheless argues that the palmprint evidence was material, relying on our decision in *Williams v. Whitley,* 940 F.2d 132 (5th Cir.1991). In *Williams,* the only evidence connecting the defendant to the murder with which he was charged was the eyewitness testimony of the victim's wife. The prosecution, however, failed to produce to the defendant a police report in which the victim's wife admitted to visiting a methadone clinic shortly before the murder. *Id.* at 133-34. We remanded the case to the trial court for an evidentiary hearing to determine whether the failure to produce this information violated the *Brady* doctrine. *Id.* at 134. Because the case was remanded for an evidentiary hearing, we neither found a *Brady* violation nor concluded that the report was material. Edmond, thus, improperly relies on *Williams* for the principle that the palmprint evidence was material. Furthermore, unlike *Williams,* independent evidence here connected Edmond to the murder.

> Edmond further relies on the case of *Bowen v. Maynard,* 799 F.2d 593 (10th Cir.1986), in which the court held that "[w]here ... identity is in issue, a creditable alibi defense is presented, and no physical evidence ties the defendant to the crime, [evidence] showing that someone resembling the defendant had motive, opportunity, and ability to commit the crime is "sufficient to undermine our confidence in the outcome' of the trial." *Id.* at 613 (quoting *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383). *Bowen,* however, is distinguishable from the present case because the palmprint evidence withheld by the prosecution merely was cumulative of other evidence presented at Edmond's trial. During the trial, the jury was aware of Brown's presence at the scene of the crime and his alleged ownership of the gun. The jury was entitled to believe either Edmond's testimony implicating Brown as the killer or the testimony of other witnesses indicating Edmond killed Cruz. The jury ultimately chose to credit the testimony of the other witnesses over Edmond's and was well within its province to do so. *See Smith,* 904 F.2d at 968 (noting that jury is entitled to disbelieve portions of the defendant's testimony and believe contradictory testimony by a witness). Furthermore, Edmond did not create an effective case for mistaken identity because substantial circumstantial evidence, including Edmond's own statement to the police, connected him to the crime. *See id.* (holding that defendant did not make effective case for mistaken identity because circumstantial evidence connected him to the crime).

[11]Our holding today in no way condones the prosecution's failure to produce the palmprint evidence. *Brady* commands the prosecution to produce evidence having even a modicum of materiality to a defendant. Here, the prosecution's failure to follow the dictates of *Brady* does not constitute a due process violation only because the result of Edmond's trial would not have been different had the palmprint evidence been disclosed. We note that such an inquiry could be avoided in future cases if the prosecution simply produces evidence of questionable materiality either directly to the defendant or to the district court for an in camera inspection.