Edward BEALL, Petitioner,

v.

Janie COCKRELL, Director, Texas Department of Criminal Justice, Institutional Division Respondent.

No. 3–01–CV–0546–D.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 18, 2001.

Edward Bell, Dalhart, TX, pro se.

Karyl Krug, Atty. General of Texas, Habeas Corpus Div., Austin, TX, for respondent.

### ORDER

FITZWATER, District Judge.

After making an independent review of the pleadings, files and records in this case, and the Findings and Recommendation of the United States Magistrate Judge, I am of the opinion that the Findings and Recommendation of the Magistrate Judge are correct and they are hereby adopted as the Findings of the Court.

### *FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

KAPLAN, United States Magistrate Judge.

This case has been referred to the United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The findings and recommendation of the magistrate judge are as follow:

### I.

Petitioner Edward Beall was convicted of aggravated sexual assault and sentenced to 10 years confinement. His conviction and sentence were upheld by the Texas Court of Criminal Appeals on direct appeal and collateral review. *Beall v. State,* No. 05–98–01086–CR, 1999 WL 512162 (Tex. App.—Dallas, July 21, 1999, pet.ref'd); *Ex parte Beall,* No. 48,403–01 (Tex.Crim.App. Feb. 21, 2001). Petitioner now seeks federal habeas relief pursuant to 28 U.S.C. § 2254.

By order dated May 4, 2001, respondent was directed to answer the habeas petition "within sixty (60) days of the date of this order, answering in substance as required by Rule 5 of the Rules Governing 28 U.S.C. § 2254 Cases in the United States District Courts." ORDER TO SHOW CAUSE, 5/4/01. Respondent did not file an answer within 60 days as required. Instead, counsel for respondent filed a motion for extension of time on July 6, 2001—three days after this answer was due. As grounds for her untimely motion, Assistant Attorney General Anne M. Marshall stated that she went to work for the Habeas Corpus Division on July 2, 2001 and had responsive pleadings due in three other cases over the next two weeks. Marshall also cited two vacancies at the Attorney General's Office "which is impacting the remaining staff." (Resp. First Mot. for Ext. of Time at 1). The Court granted a 30–day extension and ordered respondent to answer or otherwise plead by August 6, 2001. The order specifically recites that "[n]o further extensions will be granted absent exceptional circumstances." ORDER, 7/9/01.

The August 6, 2001 deadline came and went without any word from respondent. On August 10, 2001, the Court directed its staff attorney to contact the attorney-in-charge to determine why no answer had been filed. Marshall advised the staff attorney that she had inadvertently failed to calender the response date because of her lack of familiarity with the office computer system. After being reminded that she had missed the answer deadline, Marshall assured the staff attorney that she would file a motion for extension of time and an answer by August 13, 2001.[1] However, no pleadings were filed on that date. The magistrate judge then directed the district clerk to enter a default pursuant to Rule 55(a) of the Federal Rules of Civil Proce-

---

**1.** The telephone conversation between Marshall and the Court's staff attorney was held on Friday, August 10, 2001. The next business day was Monday, August 13, 2001.

dure.[2]  Default was entered on August 14, 2001.

On August 15, 2001—two days after Marshall promised the Court that she would file an answer and nine days after this pleading was due—respondent filed an out-of-time motion for extension of time and an answer to the habeas petition. When respondent learned that a default already had been entered, she objected to the magistrate judge's order or, alternatively, sought to alter or amend the judgment.  That motion was denied on August 23, 2001.[3]  On August 30, 2001, respondent filed a motion to set aside the entry of default.  The Court will consider that motion and the motion for extension of time to file an answer at the outset.[4]

## II.

■ A district court may set aside an entry of default "[f]or good cause shown." FED. R. CIV. P. 55(c); *Lacy v. Sitel Corp.*, 227 F.3d 290, 291–92 (5th Cir.2000). Among the factors relevant to this determination are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the opposing party; and (3) whether a meritorious defense is presented.  *See Matter of Dierschke*, 975 F.2d 181, 183 (5th Cir.1992), *citing United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir.1985).  Although

these factors are not talismanic, willful failure alone may constitute sufficient cause for refusing to set aside an entry of default.  *Dierschke*, 975 F.2d at 184–85. Willfulness in this context is reviewed under an "excusable neglect" standard.  *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir.1992).

■ Respondent candidly acknowledges that there is "no excuse for the behavior of Anne Marshall, who has been replaced by [another attorney] as a result of the circumstances giving rise to this default." (Rep. Mot. to Set Aside Dflt. at 3).  Nevertheless, respondent argues that the willful conduct of her former attorney should not be imputed to the TDCJ–ID, "particularly given that this is a habeas corpus case." (*Id.*).  Many courts, including the Fifth Circuit, frown on the use of default judgments to grant habeas relief without reaching the merits of the claim.  *Broussard v. Lippman*, 643 F.2d 1131, 1134 (5th Cir.1981), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981) ("dilatoriness, standing alone, does not provide a sufficient basis for granting the writ"); *see also Bleitner v. Welborn*, 15 F.3d 652, 653 (7th Cir.1994) (default judgments disfavored in habeas proceedings); *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir.1990) (same); *Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir.1987) (same); *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir.), *cert. denied*, 469

---

**2.** Rule 55(a) provides:

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

FED R. CIV. P. 55(a).

**3.** The district judge overruled respondent's objections to the magistrate judge's order because the clerk would have been required to enter a default with or without a court order. Respondent's alternative motion to amend or alter the judgment was denied without preju-

dice because no judgment has yet been entered in this case.  ORDER, 8/23/01.

**4.** A motion for extension of time is a nondispositive pretrial matter that may be referred to a magistrate judge for determination under 28 U.S.C. § 636(b)(1)(A).  However, it is not clear whether a magistrate judge has authority to set aside an entry of default.  *See Parks v. Collins*, 761 F.2d 1101, 1104–05 (5th Cir.1985) (magistrate judge lacks authority to enter order setting aside default judgment). Therefore, in an abundance of caution, the magistrate judge will issue a report and recommendation on both motions.

U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984) (same); *Allen v. Perini,* 26 Ohio Misc. 149, 424 F.2d 134, 138 (6th Cir.), *cert. denied,* 400 U.S. 906, 91 S.Ct. 147, 27 L.Ed.2d 143 (1970) (same). However, that does not mean that a court is powerless to sanction dilatory conduct in violation of its orders. At least one district judge in this circuit, frustrated by the repeated failure of the Texas Attorney General to meet court-imposed deadlines in a habeas case, has refused to consider an untimely response. *Bennett v. Collins,* 835 F.Supp. 930, 935–36 (E.D.Tex.1993) (Justice, J.). *See also Frick v. Quinlin,* 631 F.2d 37, 40 (5th Cir.1980) (court may either consider or disregard response filed five days late). The Court finds that such a sanction is appropriate here.

■■ Counsel for respondent failed to comply with two court orders requiring her to answer petitioner's application for writ of habeas corpus. Only after the clerk entered a default did respondent file a responsive pleading. By her own admission, there is no excuse for this dilatory conduct. Although the Court cannot enter a default judgment, it is not required to set aside the entry of default or allow respondent to file an untimely answer. Accordingly, respondent's motion to set aside the entry of default and motion for extension of time to file an answer should be denied. The Court will consider the habeas petition without reference to the untimely pleadings submitted by respondent.[5]

### III.

Petitioner challenges his aggravated sexual assault conviction and resulting 10–year sentence on multiple grounds. Succinctly stated, he contends that: (1) the prosecutor and defense counsel improperly commented on his failure to testify; (2) the state failed to disclose exculpatory evidence; (3) a witness testified about his post-arrest silence; (4) he received ineffective assistance of counsel; and (5) the cumulative effect of these errors resulted in an unfair trial.

### A.

■■ The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT, Pub.L. 104–132, 110 Stat. 1214 (1996) ("AEDPA"). Under the AEDPA, a habeas petitioner may not obtain relief with respect to any claim that was adjudicated on the merits in a state court proceeding unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to

---

**5.** Although not implicated here, the consequence of failing to consider an untimely answer may result in the waiver of procedural defenses. *See Bennett,* 835 F.Supp. at 936–37.

the facts of the prisoner's case." *Id.,* 120 S.Ct. at 1523. A state court decision is entitled to deference unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir.2000). A presumption of correctness attaches to factual determinations made by a state court, and the petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Jackson v. Johnson,* 150 F.3d 520, 524 (5th Cir.1998), *cert. denied,* 526 U.S. 1041, 119 S.Ct. 1339, 143 L.Ed.2d 503 (1999).

### B.

Petitioner first contends that the prosecutor and defense counsel improperly commented on his failure to testify in their remarks to the jury during closing argument. He maintains that such conduct violated his Fifth Amendment privilege against self-incrimination.[6]

### 1.

A prosecutor may not comment directly or indirectly on a defendant's failure to testify in a criminal case. *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965); *United States v. Wade,* 931 F.2d 300, 305 (5th Cir.), *cert. denied,* 502 U.S. 888, 112 S.Ct. 247, 116 L.Ed.2d 202 (1991). The test is whether the remark was "manifestly intended or was of such character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Madden v. Collins,* 18 F.3d 304, 309 (5th Cir.1994), *cert. denied,* 513 U.S. 1156, 115 S.Ct. 1114, 130 L.Ed.2d 1078 (1995); *Milton v. Procunier,* 744 F.2d 1091, 1095 (5th Cir.1984), *cert. denied,* 471

U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). Such a determination depends heavily on the context in which the remark was made. *Montoya v. Collins,* 955 F.2d 279, 286 (5th Cir.), *cert. denied,* 506 U.S. 1036, 113 S.Ct. 820, 121 L.Ed.2d 692 (1992); *Brock v. McCotter,* 781 F.2d 1152, 1159 (5th Cir.), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986).

### 2.

Petitioner was indicted for the aggravated sexual assault of his former girlfriend, Rhonda Henderson. At trial, Henderson testified that she allowed petitioner to spend the night at her apartment on August 12, 1997. (SF–II 8). Henderson and her two year-old daughter slept in the bed. Petitioner slept on the sofa. (*Id.* at 10). In the middle of the night, Henderson awoke to find petitioner standing over her, naked. (*Id.* at 11). Petitioner grabbed her arms, pinned them above her head, removed her clothes, and forced her to have sexual intercourse with him. (*Id.* at 13–16). Henderson managed to escape and ran into the bathroom. (*Id.* at 17). Petitioner chased her into a closet and held her down with his knee in her back. (*Id.* at 17–18). When Henderson complained that she could not breathe, petitioner stated, "You should have been thinking about breathing before you was [sic] coming down to the jail and trying to get with the guards." (*Id.* at 18–19). Petitioner then beat Henderson with his hands and a wire clothes hanger, telling her, "Bitch, I ought to kill you." (*Id.* at 19–21). Eventually, petitioner let Henderson out of the closet and told her to get back in bed to have sex with him. (*Id.* at 22). When she refused, petitioner

---

**6.** The Court has found no authority for the proposition that an improper comment made by *defense counsel* regarding a defendant's failure to testify constitutes a Fifth Amend- ment violation. Rather, it appears that such a claim should be brought under the Sixth Amendment for ineffective assistance of counsel.

grabbed Henderson by the hair, dragged her to the bed, and raped her again. (*Id.* at 23–25).

Petitioner did not testify and no other eyewitness testimony was presented. During closing argument, defense counsel told the jury:

If you want to convict somebody legally, [the state] has met their requirement. They have brought you their one eyewitness. Legally they have met that requirement.

You remember when I was talking to [a prospective juror] when we were all out here and I was talking about the one eyewitness thing, that's good because it doesn't restrict the State to bring you one eyewitness. But you remember I turned it around and the problem with that is there's no witnesses for the defendant either.

He can't produce anybody that was there that night because there was nobody there that night except that child. Get to that in a minute. But that's just a handicap that you have. I have no choice but to attack their case.

(SF–II 115). Counsel went on to attack Henderson's credibility and suggested that she was lying. (*Id.* at 120). On rebuttal, the prosecutor stated:

We don't expect you to convict somebody just because we brought you witnesses but we do expect you to convict somebody because we have proven our case to you beyond a reasonable doubt. Now, I hope that you took your common sense into the jury box when you came and sat as jurors. I'm sure you did. Common sense will tell you that we have proven this case beyond a reasonable doubt. *It's uncontroverted that Rhonda*

*Henderson was sexually assaulted on that day.*

(*Id.* at 125) (emphasis added).

■ Petitioner maintains that this jury argument constituted an improper comment on his failure to testify because he was the only other witness who could have controverted Henderson's version of the alleged sexual assault. The Court disagrees. These statements were not "manifestly intended or [ ] of such character that a jury would naturally and necessarily take [them] to be a comment on the failure of the accused to testify." *Madden,* 18 F.3d at 309. Rather, both the prosecutor and defense counsel merely pointed out that Henderson's testimony was uncontroverted. This does not constitute a Fifth Amendment violation. *See United States v. Jefferson,* 258 F.3d 405, 414 (5th Cir. 2001), *pet. for cert. filed* (Aug. 30, 2001) (No. 01–6092), *citing United States v. Jennings,* 527 F.2d 862, 871 (5th Cir.1976). *See also United States v. Morrow,* 177 F.3d 272, 300 (5th Cir.), *cert. denied,* 528 U.S. 932, 120 S.Ct. 333, 145 L.Ed.2d 260 (1999) (reference to "undisputed facts" not indirect comment on defendant's failure to testify).

### C.

Next, petitioner argues that the prosecutor failed to disclose exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[7] This evidence generally consists of: (1) information from the prosecutor's independent investigation; (2) information from the interviews of unspecified witnesses; (3) information regarding Officer Lisa Andrus; (4) forensic evidence; (5)

---

**7.** This claim is raised in a supplemental attachment to petitioner's application for writ of habeas corpus. (Pet. First Supp. at 3–4).

photographs; (6) exculpatory information; and (7) any and all mitigating evidence.

### 1.

The due process clause requires the prosecutor to disclose all evidence favorable to the defendant in a criminal case. *See id.,* 83 S.Ct. at 1196; *Edmond v. Collins,* 8 F.3d 290, 293 (5th Cir.1993). In order to establish a *Brady* violation, the defendant must prove that the evidence suppressed by the prosecutor is favorable to him and material to either guilt or punishment. *Edmond,* 8 F.3d at 293; *United States v. Jackson,* 978 F.2d 903, 912 (5th Cir.1992), *cert. denied,* 508 U.S. 945, 113 S.Ct. 2429, 124 L.Ed.2d 649 (1993). Evidence is "material" only if there is a reasonable probability that the outcome of the trial would have been different had the exculpatory material been disclosed. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *Andrews v. Collins,* 21 F.3d 612, 626 (5th Cir.1994), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995).

### 2.

Petitioner has failed to identify the specific evidence allegedly withheld by the prosecutor. He states only that certain unspecified information, photographs, and other evidence should have been produced to him and his attorney. Without a more facts, the Court cannot conclude that the evidence at issue was favorable to petitioner and material to either guilt or punishment. *See Barnard v. Collins,* 958 F.2d 634, 642 n. 11 (5th Cir.1992), *cert. denied,* 506 U.S. 1057, 113 S.Ct. 990, 122 L.Ed.2d 142 (1993) (habeas petitioner must show how alleged errors and omissions were constitutionally deficient). This ground

for relief is without merit and should be overruled.

### D.

Petitioner further contends that Coppell Police Officer Joel Wingo, who testified on behalf of the state, improperly commented on his post-arrest silence in violation of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).[8]

### 1.

As a general rule, "use for impeachment purposes of petitioner's silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Id.,* 96 S.Ct. at 2245. This rule protects the implicit assurance given by the state, through *Miranda* warnings, that the defendant will not be penalized for exercising his right to remain silent. *Id.; United States v. Rodriguez,* 260 F.3d 416, 421 (5th Cir.2001). "A prosecutor's or witness's remarks constitute comment on a defendant's silence if the manifest intent was to comment on the defendant's silence, or if the character of the remark was such that the jury would naturally and necessarily so construe the remark." *United States v. Rodriguez,* 43 F.3d 117, 121 (5th Cir.), *cert. denied,* 515 U.S. 1108, 115 S.Ct. 2260, 132 L.Ed.2d 265 (1995); *United States v. Carter,* 953 F.2d 1449, 1464 (5th Cir.), *cert. denied,* 504 U.S. 990, 112 S.Ct. 2980, 119 L.Ed.2d 598 (1992).

### 2.

Officer Wingo was called as a defense witness at trial. On direct examination, Wingo testified that he spoke with petitioner at the police station as part of his investigation of the rape complaint made

---

**8.** This claim is raised in two different supplements to petitioner's application for writ of habeas corpus. (Pet. First Supp. at 4–5; Pet. Sec. Supp. at 2–5).

by Rhonda Henderson. Defense counsel then asked:

Q: Did you have an opportunity to interview [petitioner]?

A: Yes, sir, I did.

Q: Did he voluntarily cooperate with that?

A: At first he invoked his right and later in the day requested to speak with me again.

Q: Okay. So he requested to ·speak with you after he had already declined to do so earlier. Did you have a lengthy conversation with him?

A: Yes, sir, we did.

Q: Has he continued since he's been in jail to contact you?

A: Yes, sir, through letters.

(SF–II 106).

■ Petitioner contends that this colloquy constituted an improper comment on his post-arrest silence. However, *Doyle* only addresses improper remarks made by a *prosecutor* or a *government witness*. Officer Wingo was called as a *defense* witness and was questioned by *defense* counsel. Moreover, the testimony at issue was not used for impeachment purposes. *Doyle* is simply inapplicable under these circumstances. *See Lovern v. United States*, 689 F.Supp. 569, 594 (E.D.Va.1988), *aff'd*, 884 F.2d 1390, 1989 WL 100699 (4th Cir.1989).

### E.

Petitioner also complains that the conduct of his attorney was constitutionally deficient in numerous respects. Specifically, he alleges that counsel: (1) improperly commented on his failure to testify; (2) did not file a pretrial motion for *Brady* material; (3) questioned Officer Wingo about his post-arrest silence in violation of *Doyle;* (4) was only on the case for six months; (5) did not subpoena a possible alibi witness; (6) failed to maintain adequate records, did not competently handle the case or present a defense, neglected to ask critical questions, failed to investigate the forensic evidence or photographs of the crime scene, and was generally unprepared; (7) only consulted with him twice; (8) failed to hire an investigator; (9) introduced harmful evidence at trial, had a conflict of interest, and gave erroneous legal advice; (10) abused his discretionary authority, did not act in accordance with the law, and failed to request appropriate jury instructions; (11) did not ask that the jury be sequestered during deliberations; (12) failed to present any mitigating evidence at the punishment stage of the trial; (13) did not object to the admission of extraneous offenses; and (14) failed to object to hearsay testimony.

### 1.

■ The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal case reasonably effective assistance of counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). In order to obtain federal habeas relief due to ineffective assistance of counsel, a petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner must first demonstrate that counsel's performance fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. He then must show how this deficiency prejudiced the defense. *Id.* at 2067. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 2068. *See also Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (habeas petitioner must show that trial result was unreliable or proceeding fundamentally unfair due to deficient per-

formance of counsel). There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Romero v. Lynaugh,* 884 F.2d 871, 876 (5th Cir.1989), *cert. denied,* 494 U.S. 1012, 110 S.Ct. 1311, 108 L.Ed.2d 487 (1990). In order to obtain federal habeas relief, a petitioner must affirmatively show how the actions of his attorney deprived him of a fair trial. *Czere v. Butler,* 833 F.2d 59, 63–64 (5th Cir.1987).

### 2.

■ Petitioner's first three arguments can be summarily rejected. The Court has already determined that defense counsel did not improperly comment on his failure to testify during closing argument and that there is no underlying *Brady* or *Doyle* violation. Any claims based on this conduct must fail.

Nor can petitioner establish most of his other ineffective assistance of counsel claims. For the most part, petitioner has failed to allege any facts which might suggest that the performance of his attorney was deficient or that he was prejudiced thereby. His conclusory statements and random citations to legal authority are insufficient to merit habeas relief. *See Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir.), *cert. denied,* 531 U.S. 849, 121 S.Ct. 122, 148 L.Ed.2d 77 (2000) (conclusory allegations do not raise constitutional issue in federal habeas proceeding); *Anderson v. Collins,* 18 F.3d 1208, 1221 (5th Cir.1994) (court cannot even begin to analyze ineffective assistance of counsel claim without affirmative showing of missing evidence or testimony).

### a.

■ Only three claims raised by petitioner merit further discussion. First, petitioner criticizes his lawyer for not introducing mitigating evidence at the punishment stage of the trial. According to petitioner, this evidence would have shown that he was a productive citizen, held a stable job, attended college, and was not a threat to commit future crimes. The Court initially observes that there is no proffer of this mitigating evidence by affidavit or otherwise. Moreover, petitioner has failed to establish that his sentence would have been "less harsh" had counsel introduced this evidence. *See United States v. Segler,* 37 F.3d 1131, 1136 (5th Cir.1994) (standard for ineffective assistance of counsel at punishment phase of non-capital case). *But see Glover v. United States,* 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001) (even minimal amount of additional time spent in prison can constitute prejudice under *Strickland*). At the punishment hearing, the jury learned that petitioner had prior convictions for assault, possession with intent to deliver cocaine, criminal trespass, and possession of marijuana. Notwithstanding this rather impressive criminal record, petitioner was sentenced to only 10 years in prison for aggravated sexual assault.[9] The Court is unable to conclude that petitioner would have received a less harsh sentence if counsel had introduced the mitigating evidence specified in the habeas petition.

### b.

Petitioner also complains that his attorney did not object to Rhonda Henderson's

**9.** Aggravated sexual assault is a first degree felony under Texas law. TEX. PENAL CODE ANN. § 22.021(e) (Vernon 1994). The range of punishment for this offense is not less than five years nor more than 99 years or life imprisonment. *Id.* § 12.32. During closing argument, the prosecutor did not suggest an appropriate prison term to the jury. (SF–II 140). Defense counsel asked for a five-year sentence. (*Id.* at 145).

testimony that he previously had been incarcerated. While she was being raped, Henderson told petitioner that she could not breathe. Henderson testified that petitioner responded, "You should have been thinking about breathing before you was coming down to the jail trying to get with the guards." (SF–II 18). Similar accusations of infidelity were made by petitioner following the sexual assault. Henderson said that petitioner talked to her about "his father, his uncle, people in his family that I was supposed to had been with and guys in the jail." (*Id.* at 27). The prosecutor then asked Henderson:

Q: Now, had you ever been with his father?

A: No.

Q: Had you ever been with his brother?

A: No.

Q: These guys in the jail, was he just talking about people he knew in jail or were these people you knew in jail?

A: I know none of them. He was talking about guards and stuff.

Q: Did he believe that you knew them?

A: No.

Q: What was his conversation as it related to the people in the jail?

A: He was saying when he was in jail and a guard can pass him by, he can look at that guard and tell that that guard had been with me.

Q: Did you say anything in response to all of these conversations?

A: No.

(*Id.* at 27–28).

On direct appeal, petitioner argued that his attorney was ineffective for failing to object to this testimony. The appellate court noted that, under Texas law, evidence of other crimes is not admissible to prove the defendant acted in conformity with his character, but may be admissible for other purposes, such as for proof of motive. *Beall,* No. 05–98–01086–CR, op. at 9, *citing* Tex.R. Evid. 404(b). The court found that "this testimony was evidence of appellant's motive for attacking Henderson—his belief that she had been unfaithful to him. Appellant's attorney was not ineffective for not objecting to this evidence." *Id.* This decision is not contrary to clearly established federal law or unreasonable in light of the evidence presented at trial.

### c.

Petitioner further contends that his attorney should have objected to the hearsay testimony of Coppell Police Officer Lisa Andrus. At trial, Officer Andrus testified regarding statements made by Rhonda Henderson following the rape. (SF–II 67–69). Counsel did not object. Petitioner now argues that Henderson's statements to the police officer constitute hearsay under Texas law. *See* Tex.R. Evid. 801. However, Officer Andrus also testified that Henderson was "upset" and "crying" during their conversation. (SF–II 66–67). As the state appellate court correctly held, "this testimony was subject to the hearsay exceptions for excited utterances, '[a] startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.'" *Beall,* No. 05–98–01086–CR, op. at 10, *quoting* Tex.R. Evid. 803(2). Any objection to this testimony on hearsay grounds would have been futile. *See also United States v. Baptiste,* 264 F.3d 578, 590–91 (5th Cir.2001) (identification of defendant made 30 minutes after shooting admissible as excited utterance); *United States v. Cruz,* 156 F.3d 22, 30 (1st Cir. 1998), *cert. denied,* 526 U.S. 1124, 119 S.Ct. 1781, 143 L.Ed.2d 809 (1999) (allowing hearsay testimony under excited utterance exception where out-of-court statements

by battered woman were made four hours after beating stopped). This ground for relief is without merit and should be overruled.

### F.

 Finally, petitioner maintains that the combination of errors in his trial merits federal habeas relief. This argument implicates the cumulative error doctrine, which provides that "an aggregation of non-reversible errors (i.e. plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir.1998). However, petitioner has failed to establish *any* error in the conduct of his state trial. Therefore, relief is not available under the cumulative error doctrine. *See United States v. Williams*, 264 F.3d 561, 572 (5th Cir.2001) (no cumulative error where defendant failed to identify single error in jury selection); *Miller*, 200 F.3d at 286 (petitioner who failed to demonstrate any error by trial counsel could not establish cumulative error)

### RECOMMENDATION

Respondent's motion to set aside the clerk's entry of default and motion for extension of time to file an answer should be denied. However, petitioner has failed to establish that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Consequently, his application for writ of habeas corpus should be denied.

September 25, 2001.