United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 26, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

05-70040

_____

LONNIE EARL JOHNSON,

Petitioner-Appellant,

v.

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Texas, Houston
No. H-04-3902

_____

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Petitioner Lonnie Earl Johnson, convicted of capital murder in

Texas and sentenced to death, requests this Court to issue a

Certificate of Appealability (COA) pursuant to 28 U.S.C. §

2253(c)(2). Johnson challenges only his death sentence. He raises

the following issues: (1) the prosecution suppressed material

exculpatory evidence during the sentencing phase in violation of

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

due process; (2) due process and equal protection required that his jury be instructed regarding parole laws; and (3) the Texas capital sentencing scheme's failure to require the prosecution to prove beyond a reasonable doubt future dangerousness and the absence of mitigation evidence violates due process and is in conflict with Supreme Court precedent. Finding that Johnson has not made a substantial showing of the denial of a constitutional right, we DENY the COA.

I. STANDARD OF REVIEW

Johnson filed his § 2254 petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The petition, therefore, is subject to the requirements, restrictions, and standards imposed by AEDPA. See *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 2068 (1997). Under AEDPA, a petitioner must obtain a COA before he can appeal the district court's denial of habeas relief. *See* 28 U.S.C. § 2253(c); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335-36, 123 S.Ct. 1029, 1039 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners.").

A COA determination under § 2253(c) requires this Court to conduct an overview of the habeas claims and make a general assessment of the merits. *Miller-El v. Cockrell*, 537 U.S. at 336,

2

123 S.Ct. at 1039. This Court looks to the district court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable among jurists of reason. *Id.* "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Id.*

A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327, 123 S.Ct. at 1034. Where the district court has denied claims on procedural grounds, a COA should issue only if it is demonstrated that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604 (2000). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342, 123 S.Ct. at 1042. "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been

3

granted and the case has received full consideration, that petitioner will not prevail." *Id*. at 338, 123 S.Ct. at 1040. Moreover, "[b]ecause the present case involves the death penalty, any doubts as to whether a COA should issue must be resolved in [petitioner's] favor." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

"We further note that when reviewing the district court's assessment, we must be mindful of the deferential standard of review of 28 U.S.C. § 2254(d)." *Brown v. Dretke*, 419 F.3d 365, 371 (5th Cir. 2005), *cert. denied,* 126 S.Ct. 1434 (2006). Under § 2254(d), a federal court cannot grant habeas corpus relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). With respect to the review of factual findings, AEDPA significantly restricts the scope of federal habeas review. Factual findings are presumed to be correct, and a petitioner has the burden of rebutting this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

II.  SUPPRESSION OF EVIDENCE

Johnson argues that the State failed to disclose exculpatory evidence relating to a State's witness who testified during the punishment phase.  *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).  The State has a duty to disclose evidence favorable to the accused that is material to guilt or punishment.  *See id.* at 86-87, 83 S.Ct. at 1196-97.  To establish this due process violation, an accused must show that the State withheld evidence, that the evidence was favorable, and that the evidence was material to the defense.  *Little v. Johnson,* 162 F.3d 855, 861 (5th Cir. 1998).  "*Brady* applies equally to evidence relevant to the credibility of a key witness in the state's case against a defendant."  *Graves v. Dretke,* 442 F.3d 334, 339 (5th Cir. 2006) (citing *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972)), *cert. denied,* ___ S.Ct. ___, (NO. 05-1568) 2006 WL 2795465, (Oct 02, 2006).  However, a new trial is not automatically required "whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict."  *Giglio,* 405 U.S. at 154, 92 S.Ct. at 766 (quotation marks and citation omitted).

The standard for determining "materiality is a 'reasonable probability' of a different result."  *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566 (1995).  In assessing *Brady* materiality, "[t]he question is not whether the defendant would

more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the [State's] evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id*. (citation omitted).

During the punishment phase of Johnson's capital murder trial, the State called Donald Richardson to testify regarding violent threats Johnson made during a motorcycle trip from Tomball, Texas to Austin. Richardson testified that Johnson, who was armed with a gun, threatened to kill a man for his car. Subsequent to Johnson's conviction, Richardson recanted his trial testimony in an affidavit, stating that it was "all false" and he "consented to do this on the grounds that [the Harris County District Attorney's Office] would contact the Texas Board of Pardons and Parole and secure my early release from prison."

During Johnson's state habeas proceedings, his attorney submitted a note that had been handwritten by Richardson to Diana Lynn Glaeser, one of the prosecutors at Johnson's trial. Apparently, Johnson's habeas attorney had discovered the following note in the prosecution file:

> I need to see you as soon as possible, please come see me at the jail. I am at 1301 Franklin 7th Floor at the moment. I am having some problems that I need fixed right now. If you can't make it today please send someone else to assist me. Thank you.
> Sincerely Donald Richardson

[address omitted]
P.S. Pertaining to Lonnie E. Johnson case.

With respect to the chronology of events, the note was written on October 10, 1994. The jury found Johnson guilty of both capital murders on November 14, 1994, and three days later the judge accepted the jury's punishment verdict of a death sentence. On January 30, 1995, the prosecutor informed Johnson's trial attorney that Richardson disavowed his testimony and wanted to "change his testimony, or words to that effect."

During Johnson's state habeas proceedings, his counsel submitted an affidavit from Richardson, which provided as follows: "The statements I made at trial about Lonnie displaying a handgun and wanting to kill a motorist were all false. These were statements made to make the district attorney happy, so she would secure my early release from prison."

The state habeas trial court made the ensuing findings of fact with respect to the instant claim based upon the "credible affidavit of Di Glaeser, the trial prosecutor in the primary case." In 1990, Richardson contacted a law enforcement agency and provided information about Johnson. In October of 1990, Richardson spoke to an investigator with the Harris County District Attorney's Office and the information provided in that interview was consistent with Richardson's trial testimony. The "State's file was always open to the applicant's trial counsel, and that trial counsel went to the State's office to inspect the file." The court further found:

7

that Donald Ray Richardson contacted the Harris County District Attorney's Office several times in the days leading up to the trial of the primary case; that Richardson was serving concurrent prison sentences for auto theft and burglary at the time of trial and was bench warranted from TDC to the Harris County Jail prior to trial; that Richardson indicated that he was having problems in the jail and wanted to be moved; that Glaeser passed this information on to her investigator, who in turn contacted the county jail personnel; and that Richardson was ultimately moved within the jail.

Additionally, the court found that after Richardson was moved once within the jail, any other requests he made, including to be moved again, were ignored by the State. Richardson was informed that he would not receive any "deals" in exchange for his testimony against Johnson. The court expressly found that Glaeser neither made a deal with Richardson nor instructed or encouraged him to lie at trial.

The court also found credible the affidavits of Rob Kepple, an assistant district attorney who was involved in the pretrial proceedings, and D.C. Wells, an investigator for the Harris County District Attorney's office. Both affiants stated that Richardson received no deal or agreement in exchange for his testimony.

In a nutshell, the state habeas court found that the prosecution did not promise anything in exchange for Richardson's testimony. The only "benefit" Richardson received was being relocated away from Johnson within the jail. As the court below stated, the state habeas court's factual findings "destroyed Johnson's habeas claims."

Johnson contends that he did not have a "fair opportunity to

8

challenge the credibility of the prosecutors" and that "all credibility decisions were made from a cold record." Prior to AEDPA, this Court has explained that "the presumption of correctness does not become inapplicable for the *sole* reason that no live evidentiary hearing has been held." *May v. Collins,* 955 F.2d 299, 311 (5th Cir. 1992) (emphasis in original). Thus, this challenge to the factual findings would have failed even pre-AEDPA. AEDPA "jettisoned all references to a 'full and fair hearing' from the presumption of correctness accorded state court findings of fact." *Valdez v. Cockrell,* 274 F.3d 941, 949 (5th Cir. 2001). "The presumption of correctness erected in its place at § 2254(e)(1), now simply provides that unless the petitioner can rebut the findings of fact through clear and convincing evidence, those findings of fact are presumed to be correct." *Id.* Johnson has failed to marshal clear and convincing evidence to rebut the presumption of correctness afforded the state court's findings of fact.

Moreover, as the district court concluded, "[e]ven if the prosecution knew that Richardson would fabricate his testimony or made a 'deal' that resulted in his lies – and Johnson has not made either showing – the evidence against Johnson would allow the state habeas court to conclude that Richardson's testimony was not material under the *Brady* standard." "The materiality of *Brady* material depends almost entirely on the value of the evidence

9

relative to the other evidence mustered by the state." *Edmond v. Collins,* 8 F.3d 290, 293 (5th Cir. 1993) (internal quotation marks and citation omitted). Johnson does not dispute the state court's finding that "there were twenty-three punishment phase witnesses other than Donald Richardson who testified concerning at least nine incidents of actual violence by [Johnson] as well as many other incidents of threatened violence." Moreover, numerous witnesses (both prison guards and inmates) testified to Johnson's continuing violent behavior *after* his incarceration for the instant capital murders. In view of the other evidence of Johnson's future dangerousness, combined with the instant execution-style murders of the two teenage boys who apparently were attempting to help Johnson with his feigned car trouble, we conclude that there is no reasonable probability that disclosure of the allegedly suppressed evidence would have resulted in a different outcome at sentencing. Accordingly, because we conclude that jurists of reason would not find the district court's disposition of this claim debatable, we deny a COA.

III. PAROLE INSTRUCTION

Johnson next contends his due process and equal protection rights require that a jury be instructed with respect to parole laws and the "implication of a life sentence." Johnson did not request that the jury be so instructed, and the state habeas court

10

found that the claim was procedurally barred. The district court therefore found that it was procedurally barred from considering this claim.

Johnson acknowledges that no objection was made. Nonetheless, relying on Texas state law, he argues that he was not required to object based on the "right not recognized" exception. When faced with this precise argument, this Court has explained that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Rosales v. Cockrell,* 48 F.App'x 103 *6 (5th Cir. 2002) (unpublished) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475 (1991)). As such, the district court's conclusion that habeas review of Johnson's claim is procedurally barred is not debatable among reasonable jurists. Johnson has not demonstrated either cause or prejudice, or that imposition of the bar would constitute a miscarriage of justice. He thus has failed to show that jurists of reason would find the district court's procedural bar debatable.

In any event, our precedent squarely precludes Johnson from making a substantial showing regarding the denial of due process or equal protection rights with regard to this claim. *See, e.g., Coleman v. Quarterman,* 456 F.3d 537, 544-45 (5th Cir. 2006) (rejecting claim that the equal protection clause is violated by the discretionary ability of Texas trial judges to instruct a jury regarding a defendant's parole eligibility); *Miller v. Johnson,* 200

11

F.3d 274, 290 (5th Cir. 2000) (rejecting claim that due process required parole instruction regarding petitioner's parole eligibility). The district court's disposition of this claim is not debatable, and thus, we deny a COA.

IV. UNCONSTITUTIONAL SENTENCING SCHEME

In his final claim, Johnson argues that the Texas sentencing scheme is "unconstitutional because there is no requirement that the State prove beyond a reasonable doubt that the answers to the special issues presented to the jury must be answered 'yes.'" In support of this argument, Johnson principally relies on *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738 (2005), *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004), and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428 (2002). The district court denied relief, stating, inter alia, that it could not grant relief without creating a new rule in violation of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060 (1989).

With respect to Johnson's reliance on *Booker* and *Blakely,* "[t]his argument is foreclosed before this court by *United States v. Gentry*, 432 F.3d 600, 605 (5th Cir. 2005), and *In re Elwood*, 408 F.3d 211, 212-13 (5th Cir. 2005) (per curiam), both of which hold that the *Blakely/Booker* line of cases does not apply retroactively to cases on collateral review." *United States v. Edwards*, 442 F.3d

12

258, 268 (5th Cir. 2006).[1]  With respect to his reliance on *Ring,* the Supreme Court has explicitly held that "*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review." *Schriro v. Summerlin,* 542 U.S. 348, 358, 124 S.Ct. 2519, 2526 (2004).[2]  Moreover, this Court recently rejected the claim that the State is constitutionally required to prove beyond a reasonable doubt the absence of mitigating circumstances.  *Granados v. Quarterman,* 455 F.3d 529, 536-37 (5th Cir.), *petition for cert. filed* (Sept. 28, 2006)(NO. 06-6932).  The district court's disposition of this claim is not debatable and thus, we deny a COA.

V.   CONCLUSION

For the above reasons, the request for a COA is DENIED.

---

[1]  Although *Edwards* involved a section 2255 motion, its holding is applicable to the instant section 2254 proceeding. *See United States v. Orozco-Ramirez*, 211 F.3d 862, 864 n.4 (5th Cir. 2000).  "'Because of the similarity of the actions under sections 2254 and 2255, they have traditionally been read *in pari materia* where the context does not indicate that would be improper.'" *Id.* (quoting *United States v. Flores*, 135 F.3d 1000, 1002 n. 7 (5th Cir. 1998)).

[2]  Johnson also cites *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239 (1994), in which the Supreme Court held that an instruction defining "reasonable doubt" did not violate the due process clause.  We agree with the district court's conclusion that *Victor* is inapposite because Johnson is not challenging any definition of "reasonable doubt" contained in the jury instructions.

13