**PERSELS & ASSOCIATES, LLC, Robert R. Gillispie and K. David Bradley, Jr., Appellants**

v.

**CAPITAL ONE BANK, (USA), N.A., Citibank, South Dakota, N.A., Appellees**

.2014–SC–000131–DG

Supreme Court of Kentucky.

RENDERED: FEBRUARY 18, 2016

---

**11.** *Mengel*, 618 S.W.2d 184.

502

Counsel for Appellants: William G. Deatherage, Jr., Mark Alexander Gilbert, Hopkinsville, Joyce Ann Merritt, Lexington.

Counsel for Appellees: Molly Elena Rose, Louisville, Frederick S. Hecht.

## OPINION OF THE COURT BY JUSTICE CUNNINGHAM

"One of the basic principles, one of the glories, of the American system of justice is that the courthouse door is open to everyone—the humblest citizen, the indigent, the convicted felon, the illegal alien." *N.A.A.C.P. v. Meese,* 615 F.Supp. 200, 205–06 (D.D.C.1985).

We granted discretionary review of this case to address/the prevalence of limited-representation agreements. These agreements are sometimes referred to as the "unbundling" of legal services. We hold that such agreements are permissible so long as they are reasonable under the circumstances and otherwise comport with our rules of practice and procedure, and the following analysis.

### *Background*

Sarah Jackson and David Thomas, of Owensboro, individually retained Appellants Persels & Associates, LLC ("Persels") to defend them in their debt collection cases that were pending before the Daviess Circuit Court. Persels is a national law firm organized in Maryland and engaged primarily in unsecured debt collection cases such as credit card debt. Here, Persels attempted to negotiate with the credit card companies on behalf of its clients. To assist in negotiations, Persels retained Kentucky attorneys K. David Bradley of Salt Lick, Kentucky, and Robert Gillispie of Leesburg, Virginia, to provide limited representation. Mr. Bradley was assigned to "assist" Sarah Jackson; and Mr. Gillispie was assigned to "assist" David Thomas.

The terms of Jackson's and Thomas's limited-representation agreements with Persels were confined to drafting and consultation services. The agreements specifically provided that neither Kentucky lawyer was required to sign pleadings, enter an appearance, or attend court proceedings. Therefore, it appears that the defendants were nominally pro se. They either signed the documents that were prepared for them, or were at least instructed to do so by counsel. In 2011, however, the Daviess Circuit Court ordered Attorneys Bradley and Gillispie to appear and show cause as to why they should not be held in contempt for their failure to enter their appearances and sign documents filed with the court. The trial court consolidated the two cases and permitted Persels to intervene as a third party respondent.

Thereafter, Persels pursued a writ of prohibition arguing that the trial court was acting outside its jurisdiction by essentially creating a new rule requiring attorneys who assist pro se litigants to sign pleadings and enter appearances. Following the Court of Appeals' denial of the writ, the trial court held a hearing on July 3, 2012, at which Persels, Bradley, and Gillispie presented evidence. The trial court determined that Persels, Bradley, and Gillispie had violated Kentucky Rules of Civil Procedure ("CR") 11 and fined each $1.00. The fine was probated conditioned upon no further violations of CR 11.

The Court of Appeals affirmed the trial court's judgment. We granted discretionary review. While Capital One Bank (USA), N.A. and Citibank, South Dakota,

N.A. are the named Appellees, no response was filed on their behalf. The original party defendants, Jackson and Thomas, and the respondent banks have no interest in this appeal. The underlying case has been resolved. Only the sanctions issue remains.

Having reviewed the record and the law, we reverse the Court of Appeals' decision and remand this case to the trial court in order to determine whether the limited-representation agreements at issue were reasonable under the circumstances.

### Analysis

■ Appellate review of a trial court's actions related to CR 11 requires a multi-standard approach. We apply a clearly erroneous standard to the trial court's findings in support of sanctions, a de novo review of the legal conclusion that a violation occurred, and an abuse of discretion standard on the type and/or amount of sanctions imposed. *Clark Equipment Co., Inc. v. Bowman,* 762 S.W.2d 417, 421 (Ky. App.1988).

### Factual Findings

The trial court's seventeen page order contains very thorough and well-supported findings. It is also undisputed that neither Attorney Bradley nor Attorney Gillispie signed any documents that were filed with the court. The court also observed that the tendered materials carried the following unsigned notation in small typeset at the end of the documents:

> This document was prepared by, or with the assistance of, an attorney licensed in Kentucky and employed by Persels & Associates, LLC/Persels & Associates, LLP (CA, MI)/Persels & Associates, PLLC (NC)—800-498-6761.

The trial court made accurate findings that were not clearly erroneous. Therefore, the primary issue here involves the trial court's legal determination that a CR 11 violation occurred.

### Legal Findings and Conclusions

Kentucky Supreme Court Rule ("SCR") 3.130 (Rule 1.2) governs the scope of representation and allocation of authority between client and lawyer. It provides in part: "A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent." SCR 3.130(1.2)(c). Comment 6 further defines the nature and scope of limited representation agreements and provides in part:

> A limited representation may be appropriate because the client has limited objectives for the representation. In addition, the terms upon which representation is undertaken may exclude specific means that might otherwise be used to accomplish the client's objectives. Such limitations may exclude actions that the client thinks are too costly or that the lawyer regards as repugnant or imprudent.

Comment 7 provides that "[a]lthough this Rule affords the lawyer and client substantial latitude to limit the representation, the limitation must be reasonable under the circumstances."

In 1991, the Kentucky Bar Association issued an advisory opinion interpreting Rule 1.2, wherein it determined that a lawyer may limit his or her representation of an indigent pro se defendant to the preparation of initial pleadings. The KBA specifically opined as follows:

> Some opinions suggest that it is sufficient that the pleading bear the designation "Prepared by Counsel." However, the better and majority view appears to be that counsel's name should appear somewhere on the pleading, although counsel is limiting his or her assistance to the preparation of the pleading.

KBA E–343 (January 1991).

That advisory also suggested the following requirements: (1) the counsel providing such limited-representation may not deceptively engage in a more extensive role; (2) the opposing counsel or opposing party may not require counsel to enter an appearance for all purposes; and (3) counsel is required to adequately investigate the facts so that the pleading can be filed in good faith. When presented with a similar issue, the American Bar Association standing committee on ethics determined:

> We reject the contention that a lawyer who does not appear in the action circumvents court rules requiring the assumption of responsibility for their pleadings. Such rules apply only if a lawyer signs the pleading and thereby makes an affirmative statement to the tribunal concerning the matter. Where a pro se litigant is assisted, no such duty is assumed.

> We conclude that there is no prohibition in the Model Rules of Professional Conduct against undisclosed assistance to pro se litigants, as long as the lawyer does not do so in a manner that violates rules that other-wise would apply to the lawyer's conduct.

Formal Opinion 07–446 (May 5, 2007).

The Court of Appeals did not discuss the KBA or ABA opinions; rather, the court affirmed the trial court's determination based on the "plain meaning of [CR 11] that pleadings must be signed by the attorney that prepares them." Contrary to the Court of Appeals' determination, however, CR 11 does not require that the pleadings be signed by the drafter. CR 11 only requires that all pleadings, motions, and other papers be signed by at least one *attorney of record.* Pro se litigants are also required to sign documents presented to the court. Attorneys Gillispie and Bradley had not entered an appearance in this case and were, therefore, not counsel of record. Here, the pro se litigants personally appeared before the trial court in support of their own defense.

The trial court looked askance at the litigants for proceeding pro se while possessing some resources with which to pay a lawyer. However, there are simply no facts in this case demonstrating that the litigants possessed sufficient resources to hire the complete services of a lawyer. To the contrary, the litigants here were being sued by multi-national banks for failure to pay their unsecured debts, thereby inferring limited financial resources on their behalf.

There is a significant portion of the population comprised of individuals who are not indigent yet do not possess the means to afford full and rigorous representation of counsel. *See* Cristina L. Underwood, Comment, *Balancing Consumer Interests in a Digital Age: A New Approach to Regulating the Unauthorized Practice of Law,* 79 Wash. L.Rev. 437, 442 (2004) ("Many low- and moderate-income households simply cannot afford the cost of personal legal services.").[1] Indeed, "[s]ubstantial evidence indicates the existence of a latent marketplace for personal civil legal services to those of low and moderate incomes."[2] Accordingly, many of our citi-

---

**1.** *See also* John C. Rothermich, Note, *Ethical and Procedural Implications of "Ghostwriting" for Pro Se Litigants: Toward Increased Access to Civil Justice,* 67 Fordham L.Rev. 2687, 2688 (1999) ("[I]t is estimated that legal services organizations were forced to deny over half of their eligible clients any assistance due to inadequate resources.").

**2.** ABA Standing Comm. on the Delivery of Legal Servs., Report on the Public Hearing on Access to Justice 4 (2003) at 4, available at http://www.abanet.org/legalservices/

zens cannot afford the full breadth of legal representation but are nevertheless in need of representation of some degree.

We encourage lawyers to take on cases that service the less fortunate. The image of our profession is enhanced by these admirable efforts. Therefore, it is clear that limited-representation agreements are necessary to some extent. However, we acknowledge that these types of arrangements may be abused to the detriment of the litigants and the courts.

For example, the Court of Appeals raised valid concerns when it observed that "Jackson, notwithstanding her limited-representation, experienced a default judgment because although Bradley prepared the pleadings, [Jackson] did not file them with the Daviess Circuit Court." The Court of Appeals also noted that Persels charged Thomas $3,283 and that Jackson was charged "a one-time legal fee of $200 plus a monthly administrative fee of $50 and a contingency fee of 30% net value saved on the settlement of her debts." In the Thomas case, Attorney Gillispie prepared extensive documents including discovery requests, responses to discovery requests, and a memorandum opposing summary judgment.

■ It is clear that the efficacy of limited-representation agreements, and the application of CR 11 and our ethical rules to those agreements, require clarification in order to avoid potential abuses. Many courts and state ethics panels have yet to address these issues. The conclusions are varied amongst those that have.[3] Although we find the various authorities discussing limited representation, "ghostwriting," and "unbundling" to be instructive, this Court alone is the final arbiter of our rules and procedure for the practicing bar. *Glenn v. Commonwealth,* 436 S.W.3d 186, 188 (Ky.2013).

## Scope and Application of Limited–Representation Agreements

■ In keeping with the letter and spirit of SCR 3.130 (Rule 1.2) and its accompanying commentary, we authorize agreements that limit the scope of legal assistance or that limit representation to discrete legal tasks, so long as they are reasonable under the circumstances and the client gives informed consent. *See* Rochelle Klempner, *Unbundled Legal Services in New York State Litigated Matters: A Proposal to Test the Efficacy Through Law School Clinics,* 30 N.Y.U. Rev. L. & Soc. Change 653, 654 (2006).[4] This includes limitations on services provided in furtherance of traditional litigation as well as alternative dispute resolution methods.

■ Agreements that limit representation to distinct *stages* of litigation may also be reasonable under the circumstances. The monumental increase in pro se and nominal pro se domestic filings provides a particularly apt example of the

downloads/delivery/reportpublichearingon accesstojustice.pdf

**3.** For a thorough analysis of these issues, see Michael W. Loudenslager, *Giving up the Ghost: A Proposal for Dealing With Attorney "Ghostwriting" of Pro Se Litigants' Court Documents Through Explicit Rules Requiring Disclosure And Allowing Limited Appearances For Such Attorneys,* 92 Marq. L.Rev. 103 (2008); *see also* Salman Bhojani, *Attorney Ghostwriting for Pro Se Litigants–Practical and Bright–*

*Line Solution to Resolve the Split of Authority Among Federal Circuits and State Bar Associations,* 65 SMU L.Rev. 653, 684 (2012) (providing a survey of attorney ethics rules and state court decisions addressing "ghostwriting").

**4.** *See also* Rothermich, 67 Fordham L.Rev. at 2691 ("According to the unbundled model, lawyers provide a prospective client with a choice of assistance from a list of discrete legal tasks, instead of the traditional full-service package.").

need for this unique type of limited-representation.[5] For instance, family law practitioners may provide comprehensive representation during property division proceedings but not provide representation in any form during child custody proceedings, or vice versa. However, these types of agreements must be carefully tailored to avoid abuse and confusion from the perspective of the client and the court.

To clarify, in addition to being reasonable under the circumstances, all agreements which limit representation must be in writing, require the informed consent of the client(s), and must comport with our rules, including the rules of professional conduct.

However, we do not adopt a strict rule requiring drafting attorneys to sign the documents they prepare pursuant to limited-representation agreements. An attorney involved in the preparation of initial pleadings (complaint, answer, cross-claims and counter-claims), must indicate that the document has been prepared by or with the assistance of counsel by providing "Prepared By or With Assistance of Counsel" on the document concerned. *See* Bhojani, 65 SMU L.Rev. at 680 ("since the court is not being misled as to the fact of the drafting assistance, the attorney is not violating the duty of candor and not deceiving the court."). Of course, in cases where there is one or more attorneys of record, at least one attorney of record must sign documents presented to the court and provide their address in accordance with CR 11. Pro se litigants must also satisfy the signature and address requirements of CR 11.

Furthermore, *active* assistance by counsel must be disclosed to the presiding tribunal and adversaries. Active assistance includes drafting documents in furtherance of litigation that extend beyond initial pleadings. Notice of active assistance shall include the name, address, and telephone number of the attorney(s) working on the case, *and the nature of the limited-representation agreement at issue.* However, such disclosures do not constitute an appearance by counsel, nor do they require the drafting attorney to appear in court on behalf of the litigant receiving limited representation unless the court or the surrounding circumstances dictate otherwise. For example, cases involving expedited or emergency relief may justify comprehensive representation, or at least a limited appearance of counsel, for the purpose of resolving the expedited matter.

In all cases, attorneys providing limited-representation are required to adequately investigate the facts to ensure that the pleadings or other documents drafted in furtherance of litigation are tendered in good faith. *See* Rule 3.1. Moreover, attorneys providing limited-representation of any kind may not deceptively engage in a more complete role. *See* Rule 8.4.

Lastly, limited representation does not require proof of indigence. Although the financial means of litigants pursuing limited-representation may be considered by courts as relevant to the overall reasonableness of the agreement, a litigant's financial status is not a dispositive factor. On this issue, deference should be afforded in favor of the litigant seeking limited representation.

**5.** *See* Deborah L. Rhode, Access to Justice 14 (2004); *Handbook on Limited Scope Legal Assistance: A Report of the Modest Means Task Force,* 2003 A.B.A. Sec. Litig. 8 ("[N]ationally, in three or four out of every five [family law] cases, one of the two parties is unrepresented" and that "both parties are unrepresented in two or three out of every five cases.").

In summary, we have discussed several types of facially reasonable agreements. However, trial and appellate courts maintain discretion to consider the surrounding circumstances in order to determine the reasonableness of the limited-representation agreement at issue.

### Sanctions and Other Remedies

This case came up to us as a Civil Rule 11 issue. However, having held that limited-representation counsel *is not* required to sign the documents prepared as part of the limited representation, CR 11 does not apply. Whether a limited-representation agreement is reasonable has *nothing* to do with the signing of pleadings. Therefore, the trial court's CR 11 sanction was improper. However, other sanctions and remedies may be appropriate in the event that a limited-representation agreement is determined to be unreasonable.

■ For example, a party to the agreement has standing to claim the agreement is a faulty contract, and could do so in a breach-of-contract or misrepresentation action. Here, the only complaint about the agreement was raised by the trial court itself, and that complaint was simply that the pleading was not signed by the attorney who drafted it. There has been no claim whatsoever in this case that the pleadings prepared by the attorneys were in any way frivolous or for an improper purpose.

■ But whether the agreement is reasonable also goes to the question whether it is *ethical*. And because it is an agreement entered into by an attorney, if it is unreasonable, for example as to the fees charged, then the attorney may have committed an ethical violation by negotiating an unreasonable contract with his client. Certainly, if a trial court becomes aware of such unreasonable aspects of a limited-representation agreement, then the court has a duty to file a bar complaint against the offending attorney, as does opposing counsel who may become aware of the situation. Indeed, the party to the agreement may do likewise. But collateral contract disputes or ethical violations are not proper issues for a trial court to address with CR 11 sanctions merely because a pleading is not signed by the attorney who drafted the document.

■ To clarify, we do not limit the authority of courts to impose other appropriate remedies that are necessary to maintain order and the integrity of the legal profession. For example, if the court determines that a limited-representation agreement is unreasonable, the court may order counsel to cease providing legal assistance of any kind to the client. If an attorney continues to provide legal assistance for a client in violation of the court's order, the court may exercise its contempt authority in order to enforce its order.

### Conclusion

We reverse the Court of Appeals and the Daviess Circuit Court's order imposing CR 11 sanctions, and remand for the trial court to determine the reasonableness of the agreements.

All sitting. Hughes, Keller, Noble, Venters, and Wright, JJ., concur.

Minton, C.J., concurs in result only.